**UNITED STATES v. KAIBNEY et al.**

No. 244.

Circuit Court of Appeals, Second Circuit.

May 22, 1946.

Robert H. Elder, of New York City (Otho S. Bowling, of New York City, of counsel), for appellants.

John F. X. McGohey, U. S. Atty., of New York City (Thomas G. Donlan, Asst. U .S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

The statute under which the appellants were convicted makes it a criminal offense to import merchandise into the United States by means of false and fraudulent invoices. 19 U.S.C.A. § 1591. The appellants were partners transacting business under the name of "Kaibney Importing Company." They were engaged in importing embroidered linens. Jacob Kaibney was stationed in Shanghai, China, and Paul Kaibney was in charge of the New York office of the firm. Jacob Kaibney would buy raw linens in China and deliver them to a firm in Shanghai known as Needle Arts Agencies which would credit him with the value of the raw material, have it embroidered by Chinese workmen in the Chefoo area, and when the finished goods were returned to Kaibney in Shanghai would bill him for the material, the cost of the Chinese labor, and a commission for services. Jacob Kaibney would then ship the goods to Paul Kaibney in New York accompanied by an invoice identical, except in respect to price, with the invoice rendered to him by Needle Arts Agencies for the same goods. In each of the twelve importations covered by a separate count of the indictment, Kaibney's accompanying invoice set forth a price considerably lower than the price stated in the corresponding invoice of the Needle Arts Agencies. The theory of the prosecution was that Kaibney falsely and fraudulently undervalued the goods in his invoices and thereby defrauded the United States of customs duties, as such duties are based upon the value stated in the accompanying invoice.

To prove the value of the goods in Shanghai the prosecutor offered in evidence photostats of copies of invoices obtained from the files of Needle Arts Agencies. These were admitted over the appellants' objection, and the main question presented by the appeal is the competency of these photostats. This question breaks down into two: (1) Were the original invoices competent evidence of the value of the goods in Shanghai; and (2) was a proper foundation laid for the introduction of secondary evidence of the contents of the originals.

■ Section 695 of Title 28 of the Code provides that in any United States court "any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any * * * transaction * * * shall be admissible as evidence of said * * * transaction * * * if it shall appear that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum * * * at the time of such * * * transaction * * * or within a reasonable time thereafter." We think that the original invoices met these conditions. Mr. Gassoun, one of the partners of Needle Arts Agencies, testified as to how the business was conducted. When Jacob Kaibney sent him linens to be finished, he gave out the work to Chinese workmen who did the embroidery and returned them. Gassoun then sent the finished goods to Kaibney and then or later sent him an invoice describing the goods as to style number and quantity and recording the price and Gassoun's commission. This was the regular course of business and was required by the arrangement between them. It is a fair inference that if the invoice did not accompany the goods it was sent within a reasonable time thereafter. Hence we think the original invoices would have been competent under the statute as a record of the price charged Kaibney for the finished goods. See Graham v. Pennsylvania Ins. Co., C.C.Pa., 10 Fed.Cas. pages 935, 939, No. 5,674.

■■ The original invoices would naturally be in Jacob Kaibney's files; but he told Brown that he had no records except check stubs. This accounted for the absence of the originals. Brown then went with Kaibney's permission to the records

of Needle Arts Agencies and in its files found copies of its invoices to Kaibney and had photostats made of them. The documents of which photostats were made were returned to Needle Arts Agencies and only the photostats were available at the trial. Gassoun testified that the photostats appeared to be copies of the Agencies' invoices. We think this was sufficient to establish that the documents from which the photostats were made were true copies of the original invoices. The trial judge was justified in inferring that documents in the Agencies' files which appeared on their face to be copies of invoices sent to Kaibney were in fact true copies. Hence we find no error in admitting the photostats in evidence. They proved that the price paid by Jacob for the finished goods was greater than the value stated in the consular invoices under which he shipped them to his firm in New York. There was ample evidence of his guilt to sustain the verdict against him.

On behalf of Paul Kaibney it is argued that he was not proved to have known that consular invoices were false. Jacob and he were partners, and if the firm was in fact paying for the imported goods only the prices shown on the consular invoices it would mean that Jacob was making substantial gifts to the firm. This is of course an absured supposition. Moreover exhibit Y, as explained by the testimony of accountant Hermes, confirms a contrary inference. In this exhibit showing remittances made by the firm to Shanghai and payments made for imported merchandise the closing entry of payments for imported merchandise was unexplained and inconsistent with the adopted accounting method. The making of such an entry was a natural way to cover up payments to Needle Arts Agencies.

The last question relates to the trial judge's refusal to tell the jury that they were not bound to accept the conclusions of the accountant. We find nothing in the record to indicate that the jury had any reason to suppose them conclusive or that the prosecution had so argued. In such circumstances at least the judge did all that was required in charging that the jury were the sole judges of "the credibility of the witnesses" and of "the weight to be given their evidence."

Judgment affirmed.