**UNITED STATES of America**
v.
**Clarence SCOTT.**
Crim. No. 70–93.

United States District Court,
W. D. Pennsylvania.
April 22, 1971.

Henry G. Barr, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Donald D. Rossetti, Monroeville, Pa., for defendant.

## OPINION

TEITELBAUM, District Judge.

The defendant, Clarence Scott, was convicted of five of six counts of mail fraud in violation of Section 1342 of Title 18, United States Code. He has moved for a new trial, asserting the following reasons therefor:

1. That the Court erred in denying defendant's Motion for Judgment of Acquittal made at the conclusion of the Government's case and renewed at the conclusion of all of the evidence,

2. That the verdict is contrary to the weight of the evidence,

3. That the verdict is not supported by substantial evidence, and

4. That the Court erred in admitting evidence and testimony regarding defendant's use of credit cards not the subject of the indictment in the case and further erred in instructing the jury with respect to such transactions.

I find that each of the contentions are without merit and the motion will be denied.

Because counsel for the defendant has made no request for the transcription of the record of trial, the Court relies in its discussion upon notes of trial taken by the Court and certain excerpts read to the Court by the Court Reporter.

The indictment charged the defendant with engaging in a fraudulent scheme whereby he obtained cash or merchandise through the use of credit cards for which he had applied under fictitious names and which consequently were issued in those fictitious names and mailed to addresses where defendant would recover them. The six counts of the indictment charged that the defendant, in pursuit of this scheme, made six specific, fraudulent, applications for credit accounts: two applications to the Mellon National Bank and Trust Company in the fictitious names of Roy Foster and Ralph D. Cole; two applications to Atlantic-Richfield Company in the fictitious names of Daniel Dane and Roy Foster; an application to the Standard Oil Company in the fictitious name of Roy Foster; and an application to the Texas Oil Company in the fictitious name of Roy Foster.

It cannot be said that the evidence offered by the Government to establish the scheme and individual acts in pursuit thereof was insubstantial. The Government's evidence established the following. At some time before October 24, 1967, an application for a credit account in the name of Daniel Dane, 9509 Kempton Avenue, Cleveland, Ohio, was submitted to the Atlantic-Richfield Company, 1100 Chamber of Commerce Building, Pittsburgh, Pennsylvania.

On October 24, 1967, a credit card was issued in response to the application and mailed to the given address of the applicant. A large outstanding balance existed on this credit account at the time of trial.

The Kempton Avenue address was a dwelling house owned and inhabited by Mrs. Nellie Washington. In 1967, she leased the apartments in the dwelling, one to Jose Crittenden and another to Leonard Dickerson. The defendant resided with Leonard Dickerson for a four month period in the early Summer of 1967.

On October 12, 1967, defendant was lawfully apprehended by the Sheriff of Livingston County, New York in connection with an offense not the subject of the instant indictment. After full and sufficient warnings as to his rights in custody, an Officer asked the defendant how he thought he could outwit oil companies. Defendant replied that he had consulted with a lawyer, that there was nothing illegal about what he was doing, that neither the Federal Government nor

the oil companies would prosecute and that if he took each oil company for up to Twenty Thousand Dollars ($20,-000.00) a year, they could cross it off.

While in custody in New York, defendant voluntarily spoke with Mr. Bernard Ward, an investigator for Gulf Oil Company. The defendant offered to make a deal with respect to the information Mr. Ward desired, but Mr. Ward refused. Nevertheless, the defendant proceeded to tell Mr. Ward that he had engaged in a practice of securing cash at various gasoline stations by "tipping" operators of those stations for making false representations on credit invoices to the effect that defendant had purchased certain goods, when, in fact, he had not. Defendant also told Mr. Ward that Daniel Dane did not exist.

On December 16, 1967, a Missouri State Police Officer stopped a vehicle driven by the defendant and, upon the officer's request for an operator's license, defendant produced a document in the name of Daniel Dane indicating that said person had passed the Missouri motor vehicle operator's examination.

Incident to a lawful arrest of the defendant at his residence, 8138 Balson Avenue, St. Louis, Missouri on January 12, 1968, Missouri police officers conducted a proper pre-Chimel [1] search of the premises. Found in a study in the residence was a note purportedly signed by Daniel Dane and to the effect that permission was given to the defendant to use Daniel Dane's credit cards. A second item discovered was a receipt for an application for a duplicate Missouri operator's license in the name of Daniel Dane. Finally, there were seized numerous receipts for credit purchases totalling more than Nine Hundred Dollars ($900.00), reflecting purchases made within a period of a few days upon credit cards other than those subject of the instant indictment, but one of which was in the name of Daniel Dane.

The Atlantic-Richfield credit card issued in the name of Daniel Dane was the specific subject of Count Four of the indictment. The jury ultimately found the defendant Not Guilty of the fourth count but Guilty of the remaining counts of the indictment. Nevertheless, for reasons which are discussed in the latter part of this Opinion, I have concluded that the evidence relating to this credit card was relevant not only to establish the specific acts charged in the fourth count but also to establish the scheme with which defendant was charged and which was an essential element of each count, the identity of the defendant as the perpetrator of that scheme, and the intent with which he acted.

Turning to the credit cards which were the subjects of the remaining five counts of the indictment, the Government proved the following. At some time before June of 1968, an account was opened in the name of General Dynamics Company with the Hudson Answering Service, 1301 Clark Building, Pittsburgh, Pennsylvania. The account was opened by a person purporting to be Roy Foster. Listed with the Answering Service, as employees of a local branch office of the General Dynamics Company were the names of Roy Foster and Ralph D. Cole, among others. The Answering Service was to receive mail on behalf of the General Dynamics Company branch office and the persons listed as its employees and forward same to 714 East Schwartz Street, Edwardsville, Illinois. It was established that the aforementioned was the address of Effie Scott, defendant's grandmother, on or about June of 1968 and until some time in 1969, when she moved to 215 West Union Street.

It was established that applications for the five credit accounts which were the subject of the five remaining counts of the indictment were submitted to the Mellon Bank and the Oil Companies on

---

1. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 22 L.Ed.2d 685 (1969). The *Chimel* decision has been held to be prospective only in United States v. Schartner, 426 F.2d 470 (3d Cir. 1970).

or about the middle of 1968. The five applications, in the names of Roy Foster and Ralph D. Cole, stated as the addresses of the applicants 1301 Clark Building, Pittsburgh, Pennsylvania. Four of the five applications stated that the applicants were employees of General Dynamics Company. All five of the accounts had substantial outstanding balances at the time of trial.

An experienced document examiner for the Postal Inspection Service was of the opinion that the application of Roy Foster for a Mellon Bank credit account, involved in Count One, and the application of Ralph D. Cole for a Mellon Bank credit account, involved in Count Two, were completed on the same Royal Typewriter. The application of Ralph D. Cole stated a prior address of the applicant to have been 8138 Balson Avenue, St. Louis, which was established to have been the residence of the defendant from the Fall of 1967 through the date of trial.

The Atlantic-Richfield credit card issued to Roy Foster and the Boron (a Sohio subsidiary) credit card issued to Roy Foster, which were the subjects of Counts Three and Five respectively, were found in April of 1969 at the service station of Alan Zeman in St. Louis, Missouri in or about a stack of tires located beneath a telephone which the defendant was using a short time before, in an attempt to secure approval from the Skelly Oil Company to use a Skelly Oil Company credit card in the name of Michael Guerraro. The telephone conversation was prompted by the station-owner's suspicion of the Guerraro credit card and subsequent call to the Skelly Oil Company, a representative of which instructed the station-owner to dishonor and pick up the card.

With respect to the application for a Texas Oil Company credit account in the name of Roy Foster, involved in Count Six, it was established that the address of Roy Foster was changed on the records of the Company to 714 East Schwartz Street, Edwardsville, Illinois, the residence of defendant's grandmoth-

er, on December 17, 1968. It was also established that a person using the credit card issued on this account signed a credit invoice stating thereon the address of the user as 8138 Balson Avenue, St. Louis, Missouri, which was occupied by the defendant at the time the receipt was given.

It is my conclusion that the aforementioned constituted substantial evidence from which the jury reasonably could find both that the defendant had engaged in the scheme charged and that, in pursuit of this scheme, the defendant applied for and received through the United States mail, and used, five different credit cards issued in the names of fictitious persons, as charged in the first, second, third, fifth and sixth counts of the indictment. The third ground of defendant's motion therefore is rejected.

Defendant's second contention, that the verdict was against the weight of the evidence, also must be rejected. The defendant offered the testimony of his brother and brother-in-law, both of whom had resided with the defendant at 8138 Balson Avenue, St. Louis at times relevant to the offenses charged, and the testimony of Leonard Dickerson, with whom the defendant resided for a month in Cleveland, Ohio, all to the effect that said witnesses knew Daniel Dane, Roy Foster and Ralph D. Cole to be actual persons, that Daniel Dane had been seen in Cleveland, Ohio on various occasions and also at the home of the defendant at 8138 Balson Avenue, St. Louis, and that Roy Foster and Ralph D. Cole resided with defendant at 8138 Balson Avenue, St. Louis, for an eight-month period in 1968. Whether this testimony was worthy of belief was a matter for the sole determination of the jury. The testimony as to the existence of one Daniel Dane was in direct conflict with defendant's in-custody admission to Mr. Ward, the Gulf Oil Company investigator, that such person did not exist. Moreover, the testimony offered on behalf of the defendant left uncontradicted and unexplained much of the Government's evidence, including the facts that the defendant was

found in possession of vehicle operator's documents in the name of Daniel Dane and that credit cards in the name of Roy Foster were found at a gas station in a place where, under the existing circumstances, only the defendant could have dropped them. It is my conclusion that the great weight of the evidence favored the Government, and defendant's second ground for new trial is rejected.

Defendant asserts that it was error to deny his motions for acquittal at the conclusion of the Government's case and later, after all of the evidence had been received. Since there was more than adequate evidence from which the jury could have found, beyond a reasonable doubt, that defendant engaged in the scheme charged and committed, in pursuit thereof, five if not all six of the acts charged in the individual counts of the indictment, this contention also is rejected.

■ One particular matter raised by defense counsel in his initial motion for acquittal warrants comment here. Defense counsel requested, inter alia, the dismissal of Count Four of the indictment, which involved the Atlantic-Richfield credit card issued to Daniel Dane, 9509 Kempton Avenue, Cleveland, Ohio, on the ground that the transactions relating to this credit card occurred in the latter part of 1967 and were not shown to be connected with the use of the Hudson Answering Service, 1301 Clark Building, Pittsburgh, Pennsylvania, in the middle of 1968, as were the five other transactions charged in the indictment. It is argued that an essential part of the scheme charged in the indictment was the alleged use of the Hudson Answering Service and that the issuance of the credit card to Daniel Dane earlier in time and at a different address, was unrelated to the scheme charged.

However, the indictment charged, and the facts educed at trial tended to prove, a scheme of a much broader nature. The indictment charged the defendant with devising a scheme to defraud various business firms and corporations by mak-ing false representations to these firms or corporations in order to obtain property or merchandise from them. It was charged, that, as one means of effectuating this scheme, the defendant utilized a commercial answering service. I do not interpret the indictment as delimiting the scope of the alleged scheme to the use of a commercial answering service in connection with his application for, and use of, credit cards issued in fictitious names. The indictment provided ample notice to defendant that he was being charged with a scheme of fraudulently using credit cards and this scheme encompassed transactions both within part of 1967 and during 1968.

■ It may be observed that Section 1342 of Title 18, United States Code, as it incorporates Section 1341 of the same Title, proscribes a specific act of using the United States mail to effectuate a fraudulent scheme. As essential elements of the offense, *both the scheme and the act in pursuit thereof* must be established. To justify the joinder in one indictment of separate acts or offenses, it need not be shown that each act was, in all respects, identical with all others, but merely that each was committed in pursuit of the common scheme charged. Rule 8(a) of the Federal Rules of Criminal Procedure.

The evidence profered by the Government substantiated the existence of a scheme broader than what defense counsel contends for. By plaintiff's own admission while in custody in New York in October of 1967, he was then engaged in nothing less than an enterprise to defraud business firms of substantial sums of money or property through the use of a number of credit cards. Plaintiff also acknowledged that, as a part of this scheme, he engaged in a practice of "tipping" gasoline station operators to induce them to pay him cash and report on credit invoices that he had purchased merchandise. The search of defendant's home in January of 1968 revealed credit receipts for a substantial number of transactions conducted within a short pe-

riod of time upon a multitude of credit cards. Again, in April of 1969, two of the credit cards in question here were discovered at a gasoline station where defendant was attempting to use a third credit card in the name of another individual. This was evidence from which the jury reasonably could conclude that the defendant was engaged in a continuing scheme whereby he obtained cash and merchandise through the fraudulent use of credit cards, that various devices were used to effectuate the scheme and that the scheme extended in duration at least from October of 1967 through April of 1969. It therefore was proper to refuse to dismiss Count Four on the ground that the Hudson Answering Service was not used as a part of the transactions surrounding the credit card involved therein.

■ Defendant's remaining contention is that it was error to admit testimony and physical evidence regarding defendant's use of credit cards not the subject of the indictment, which testimony and physical evidence tended to show that the defendant was engaged in offenses other than those charged in the indictment. The general rule applicable to the admission of such evidence was stated by Judge Goodrich in the case of United States v. Stirone, 262 F.2d 571, 576 (3d Cir. 1959):

"Evidence of other offenses may be received if relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime."

Variously, it has been stated that evidence relevant to the offenses charged is not rendered inadmissible by virtue of the fact that such evidence incidentally tends to establish other offenses. United States v. Pugliese, 153 F.2d 497, 499 (2d Cir. 1945).

In the instant case, the defendant is charged with engaging in a fraudulent scheme and committing six distinct acts in pursuit thereof. Both the existence of the scheme and the commission of a given act in pursuit thereof are requisite

elements of the offense of mail fraud. It is well established in cases involving mail fraud that evidence of other offenses is admissible where relevant to establish the fraudulent scheme or plan charged. Goodman v. United States, 273 F.2d 853, 857 (8th Cir. 1960); King v. United States, 144 F.2d 729, 732 (8th Cir. 1944); Harper v. United States, 143 F.2d 795, 803 (8th Cir. 1944); Hatem v. United States, 42 F.2d 40, 41 (4th Cir. 1930). Here, evidence of defendant's use of credit cards other than the ones designated in the indictment clearly was relevant to establish the scheme with which he was charged, i. e., the obtaining of cash or merchandise through the use of credit cards issued in names other than his own and without any intention of paying for the cash or merchandise.

Moreover, insofar as the evidence of collateral credit card transactions tends to show that the defendant was engaged in the fraudulent scheme charged, it also had a bearing upon the related questions of defendant's identity as the person committing the specific acts charged and the intent with which he acted. Instructive here is the analysis of Professor Wigmore in II, Wigmore on Evidence, Section 300 (3d Ed.1940), wherein he states at page 193:

"In proving design, the act is still undetermined, and the proof is of a working plan, operating towards the future with such force as to render probable both the act and the accompanying state of mind. The Intent is a mere appendage of the act; the Design is a force producing the act as a result."

Among the evidence to which defense counsel objected was a group of credit card receipts obtained in the search of the defendant's residence at 8138 Balson Avenue, St. Louis, in January of 1968. These receipts evidenced purchases of goods in an amount in excess of Nine Hundred Dollars ($900.00) within a period of a few days. These transactions were effectuated with the use of credit cards other than those specified in the

278

indictment. However, one of the credit receipts evidenced a purchase upon a credit card in the name of Daniel Dane. This evidence, it is believed, was clearly relevant that the defendant was engaged in a scheme to realize substantial gain from the use of a large number of credit cards issued in names other than that of the defendant, and the intent with which defendant used credit cards in his possession.

■ Defense counsel also objected to the testimony concerning defendant's attempted use of a credit card issued in the name of Michael Guerraro at a gasoline station where two of the credit cards involved in the indictment were found shortly after defendant's presence there. The Guerraro credit card was dishonored by the station owner upon discovering through a telephone call to the Skelly Oil Company that the card was on a "pick-up list". All of this evidence was properly admissible for it constituted but a series of virtually contemporaneous events. The facts concerning the use of the Guerraro card not only were relevant to defendant's scheme but also were essential to show his connection with the recovered credit cards mentioned in the indictment. No sound reason existed for withholding from the jury this relevant aspect of what was but a single series of events.

■■ Finally, defense counsel objected to the admission of statements made by the defendant while in custody in New York in October of 1967, on the ground that the fact of custody would evidence defendant's apprehension for an offense other than those charged in the indictment. Where evidence tending to show the commission of other offenses is relevant to the offenses charged, it is appropriate to weigh the probative value of the evidence against the risk that its admission will create a substantial danger of undue prejudice, United States v. Stirone, *supra*, 262 F.2d at pages 576–577. Here, there is no question that defendant's in-custody admissions not only were relevant but also were highly probative of his identity and intent and the scheme in which he was engaged. The probative value of this testimony greatly outweighed any possible danger of undue prejudice.

In passing, it may be noted that the rulings of this member of the Court at the conclusion of a number of hearings conducted out of the presence of the jury effectively excluded a considerable amount of evidence profered by the Government precisely for the reason that the possible prejudicial effect of that evidence outweighed the relevance thereof.

Finally, I find no material error in the instructions afforded to the jury on the matters in question. With respect to evidence that defendant's residence at 8138 Balson Avenue was searched in early 1968, the Court cautioned the jury, upon admission of this evidence, that they were not to speculate about, or concern themselves with, the reasons for the search. With respect to defendant's in-custody statements, the jurors were instructed that the fact of defendant's pretrial custody in New York could not be considered as evidence that he had committed any offense and that they were not to speculate as to the charges for which the defendant was being detained. With respect to collateral credit card transactions, the jury were instructed to consider the same not for the purpose of determining whether defendant may have been guilty of any offenses with respect thereto but only insofar as it had a bearing upon the identity of the perpetrator of the offenses charged, his intent, and the scheme charged. Although the jury were instructed generally upon the relevance of evidence of offenses other than the ones charged, the Court later made a corrective statement to the jury, at the request of defense counsel, indicating that the collateral credit card transactions should be considered only as occurrences and not offenses.

On March 11, 1971, this Court received a Motion for a New Trial from the defendant, *pro se*. Even though it was not timely filed, I have considered it in reaching my decision. With the exception of one, all of the grounds upon which the motion is based have been reviewed elsewhere herein. That ground asserts the unpreparedness of the defendant's attorney. In my view, this assertion is wholly without foundation. His attorney's conscientious representation was unquestionably in keeping with the highest traditions of the legal profession.

Having reviewed each of defendant's grounds for new trial. I conclude that each must be rejected and the motion denied. An appropriate Order is entered.