UNITED STATES of America,
Plaintiff-Appellee,

v.

Henry Daniel STULL, Sr., and Henry
Daniel Stull, Jr.,
Defendants-Appellants.

No. 74–2027.

United States Court of Appeals,
Sixth Circuit.

Sept. 2, 1975.

Certiorari Denied Jan. 12, 1976.
See 96 S.Ct. 794.

Edward F. Marek, Federal Defender, Donald N. Krosin, Cleveland, Ohio, for defendants-appellants.

Frederick M. Coleman, U. S. Atty., Nancy C. Schuster, Paul Brickner, Asst. U. S. Attys., Cleveland, Ohio, for plaintiff-appellee.

Before PECK, McCREE and LIVELY, Circuit Judges.

PECK, Circuit Judge.

Defendants-appellants Henry Daniel Stull, Sr., hereinafter "Henry," and Henry Daniel Stull, Jr., hereinafter "Daniel," were convicted in district court on twenty counts of a twenty-one count (one count was dismissed on the government's motion) mail fraud indictment. 18 U.S.C. § 1341 (1970). The district judge thereafter imposed on each appellant on each of the first ten counts five years' imprisonment and $1,000 fines, the prison terms to run concurrently, the fines to be cumulative; the district judge suspended imprisonment and fines on the last ten counts, but imposed five years' probation after appellants' release from prison.

Briefly, the indictment charged and the evidence would justify a jury verdict finding that appellants, between September, 1970, and February, 1971, devised and utilized a scheme to defraud various vendors by ordering merchandise without intending to make or in fact making payment therefor, and then disposing of the merchandise at various auctions. The indictment charged and the evidence would justify a jury in finding that appellants in ordering the merchandise used the name of a Cleveland firm with an established credit rating (Independent Sales Co.), and, in order to conceal their own identities and "to give the fraudulent operation the appearance of legitimacy," used various answering and remailing services and warehouses. The evidence likewise justified the jury to find that appellants utilized various corporations and trade names in their scheme. Independent Sales, a registered trade name of Bond Properties, Inc., an Ohio corporation appellants incorporated, often ordered the merchandise purportedly for sale to other corporations, there being sufficient evidence to permit the jury to find that those corporations were either appellant-controlled or non-existent. The indictment also charged twenty-one individual mailings to, and sometimes from, such vendors, answering and remailing services, warehouses, and a printer who printed stationery and purchase orders for "Independent Sales." The mailings underlying the twenty-one counts will hereinafter be referred to as the "count letters."

We affirm appellants' convictions on fifteen counts, reverse convictions on three, and remand the remaining two for further proceedings.

## SUFFICIENCY OF EVIDENCE

■ Appellants claim that there was insufficient evidence that certain count letters were, in fact, mailed, that they mailed or "caused" certain count letters to be mailed, that Daniel participated in mail fraud, and that certain count letters were mailed "for the purpose of executing" the fraudulent scheme. Of course, in testing the sufficiency of the evidence, the evidence as well as the inferences properly deducible therefrom must be viewed "in the light most favorable to the government." *United States v. Demetre*, 461 F.2d 971, 973 (6th Cir. 1972); *United States v. Shipp*, 359 F.2d 185, 188 (6th Cir.), *cert. denied*, 385 U.S. 903, 87 S.Ct. 213, 17 L.Ed.2d 134 (1966).

■ There was sufficient evidence that Henry mailed, or "caused" to be mailed, certain purchase orders from Independent Sales and certain letters praying for patience in Independent Sales' business dealings. Given overwhelming evidence of Henry's position in registering the Independent Sales trade name and of his active role in the "Stull corporations," his claim borders on being frivolous. *Shipp, supra*, at 189. See *King v. United States*, 25 F.2d 242, 245 (6th Cir. 1928).

■ Similarly, viewing "the record taken as a whole," *United States v. Ambrose*, 483 F.2d 742, 746 (6th Cir. 1973), *United States v. Maffei*, 450 F.2d 928, 930 (6th Cir. 1971), *cert. denied*, 406 U.S. 938, 92 S.Ct. 1789, 32 L.Ed.2d 138 (1972), we find sufficient evidence connecting Daniel to the fraudulent scheme. That Daniel "participated [in the fraudulent scheme] to a much lesser extent [than Henry does] . . . not thereby exonerate" Daniel. *Blue v. United States*, 138 F.2d 351, 358 (6th Cir. 1943), *cert. denied*, 322 U.S. 736, 64 S.Ct. 1046, 88 L.Ed. 1570 (1944). There was evidence, inter alia, that Daniel had been in business with Henry "all his life," that Daniel primarily handled Independent Sales' financial papers, that Daniel participated in opening accounts with two warehouses which received the ordered goods, and that Daniel likewise participated in the opening of accounts with three answering services and of one post office box (the answering services and post office box were instrumental in the scheme). There is no requirement that the government prove that Daniel individually mailed the count letters. *United States v. Joyce*, 499 F.2d 9, 16 (7th Cir.), *cert. denied*, 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974); *Blue, supra*, at 358.

■ Appellants also claim that certain count letters cannot underlie Section 1341 convictions because those letters merely confirmed prior verbal understandings with two warehouses and an answering service, and paid for storage services. Even had the warehouses or answering service confirmed the verbal understandings, "[t]he jury could have found . . . that the mailing was sufficiently closely related to the scheme so as to bring the conduct within the [mail fraud] statute." *United States v. Owen*, 492 F.2d 1100, 1103 (5th Cir.), *cert. denied*, 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180 (1974). A fortiori, appellants' confirmation letters, implying a well organized legitimate business and hinting at legitimate future dealings with the warehouses and service, were "for the purpose of executing" their fraudulent scheme. Moreover, several letters probably went beyond confirming prior verbal understandings by adding various related companies to those "Stull companies" already receiving the storage and answering services. *Joyce, supra*, at 15. Likewise, the mailed check to the storage company permitted appellants to retain its storage services and thereby furthered the fraudulent scheme. That the confirmation letters and mailed check could have been hand-delivered, or delivered otherwise than through the mails, is immaterial. See, e. g., *United States v. Britton*, 500 F.2d 1257, 1258–59 (8th Cir. 1974); *United States v. Flaxman*, 495 F.2d 344, 348 (7th Cir.), *cert. denied*, 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974).

■ We, however, find insufficient evidence supporting the jury's determinations that the work orders to Brothers Printing (Counts 8, 10, 12) were, in fact, mailed. Brothers' president-manager admitted that some work orders from Independent Sales were personally delivered to Brothers, and that such personally delivered orders were treated no differently than mailed orders. Compare *Joyce, supra,* at 18; *United States v. Ellicott,* 336 F.2d 868, 870–72 (4th Cir. 1964); *United States v. Browne,* 225 F.2d 751, 756 (7th Cir. 1955); *United States v. Baker,* 50 F.2d 122, 123 (2d Cir. 1931), with *United States v. Minkin,* 504 F.2d 350, 352 (8th Cir. 1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975); *Smith v. United States,* 343 F.2d 539, 544 (5th Cir.), *cert. denied,* 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99 (1965). No stamped envelope was introduced. *Browne, supra,* at 753, 756. The president-manager's testimony that he received the orders through the mail is no more than a conclusion, particularly in light of his admission that his secretary opened the mail, see *Mackett v. United States,* 90 F.2d 462, 464 (7th Cir. 1937), *Baker, supra, Browne, supra,* at 756, and a rather weak conclusion at that, given the passage of four years between the receipt of these small, routine orders and his testimony. See *Ellicott, supra,* at 870.

## ADMISSIBILITY OF EVIDENCE

■ Appellants claim that fifty-three (53) references in the evidence to certain of their companies and of their aliases were unrelated to the Independent Sales indictment and, consequently, unnecessarily prejudicial. The district judge, however, cautioned the jury that

"use of many fictitious or coded names, business entities, corporations, post office boxes, telephone answering services and mail drops . . . is not . . . per se, illegal . . . .. The question for your determination is the intent with which such course of conduct was undertaken. Was it for legitimate business purposes or was it intended as a device or as part of a scheme to defraud?" Trial Transcript 3631–32.

Thus, appellants' citation of cases concerning the admission of evidence of "other crimes" is somewhat offpoint; evidence of "other occurrences" may well be less prejudicial than evidence of "other crimes." *United States v. Simmons,* 503 F.2d 831, 834–35 (5th Cir. 1974.)[1] More fundamentally, however, a comprehensive reading of the record convinces us that the use of aliases and other companies was part of the fraudulent scheme. "There can be no objection if the proof is commensurate with the nature of the charge." *Stratton v. United States,* 387 F.2d 364, 365 (10th Cir. 1968). See *United States v. Sheehan,* 428 F.2d 67, 74–79 (8th Cir.), *cert. denied,* 400 U.S. 853, 91 S.Ct. 66, 27 L.Ed.2d 90 (1970); *United States v. Scott,* 326 F.Supp. 272, 277–78 (W.D.Pa.1971), *aff'd,* 460 F.2d 45 (3rd Cir. 1972).

■ Likewise, we find no error in admitting evidence that between January, 1970, and May, 1971, Henry delivered considerable merchandise to four auctioneers for auction. Appellants properly refuse to challenge the admissibility of such evidence if the merchandise delivered for auction was, in fact, obtained through the charged fraudulent scheme. See *United States v. Miles,* 483 F.2d 1372, 1374 (8th Cir. 1973), *vacated on other grounds,* 415 U.S. 970, 94 S.Ct. 1553, 39 L.Ed.2d 867 (1974); *United States v. Cobb,* 397 F.2d 416, 417 (7th Cir.), *cert. denied,* 393 U.S. 924, 89 S.Ct. 255, 21 L.Ed.2d 260 (1968); *United States v. Rappaport,* 292 F.2d 261, 262–

---

1. Of course, even evidence of other crimes is often admissible, *see, e. g. Manning v. Rose,* 507 F.2d 889 (6th Cir. 1974), *United States v. Lewis,* 504 F.2d 92, 104 (6th Cir. 1974), *cert. denied,* 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975), sometimes even in the absence of a cautionary instruction. *United States v. Franks,* 511 F.2d 25, 36 (6th Cir.), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 693 (1975).

63 (3rd Cir.), *cert. denied*, 368 U.S. 827, 82 S.Ct. 48, 7 L.Ed.2d 31 (1961). Rather appellants claim that the auctioned merchandise was insufficiently connected with the merchandise obtained through the charged fraudulent scheme. We disagree. First, despite problems,[2] the record reveals the merchandise obtained through the charged fraudulent scheme and the auctioned merchandise included many common items, such as radios, ice cream freezers, hair clippers, sleeping bags, Christmas tree lights, toasters, dolls, razor blades, handkerchiefs, mops, luggage, jewelry, and sporting equipment. Second, a postal inspector testified that Henry removed merchandise from a warehouse which received goods obtained in the fraudulent scheme, transported those goods by rental truck to another warehouse, and apparently transported other goods from the second warehouse to one of the auctions. Even if prejudicial,[3] evidence of the use of the auctions was sufficiently connected with the fraudulent scheme.

■ Similarly, we find no error in the district judge's refusal to strike the testimony of a postal inspector defining a "same-name" scheme. Appellants claim that the district judge erred because the government never attempted to relate the testimony to appellants. Such "general background," *Moore v. United States*, 394 F.2d 818, 819 (5th Cir. 1968), *cert. denied*, 393 U.S. 1030, 89 S.Ct. 893, 21 L.Ed.2d 789 (1969), however, was properly admitted as "thr[owing] a spotlight" on appellants' activities and enabling "the jury to appreciate that [certain of appellants'] activities while in them-

selves seemingly harmless, when considered [together with other activities], might have been part of a cleverly planned and precisely executed scheme." *People v. Crooks*, 250 Cal.App.2d 788, 59 Cal.Rptr. 39, 41 (1967). Accord, *United States v. Jackson*, 138 U.S.App.D.C. 143, 425 F.2d 574 (1970); *Moore, supra; Commonwealth v. Townsend*, 149 Pa.Super. 337, 27 A.2d 462 (1942). See generally Annot., Expert Testimony as to Modus Operandi of Criminals with Respect to Particular Types of Crimes, 100 A.L.R.2d 1433 (1965). Though perhaps better practice to caution the jury concerning such expert testimony, *United States v. Henson*, 159 U.S.App.D.C. 32, 486 F.2d 1292, 1303 n. 12 (1973), *Jackson, supra*, at 575, such failure cannot be deemed reversible error and, in light of appellants' failure to request such an instruction, it clearly does not rise to the level of plain error. Fed.R.Crim.P. 52(b). *Troutman v. United States*, 100 F.2d 628, 633 (10th Cir. 1938). The expert testimony consisted of just more than one page of a 3,600-page transcript, and, more importantly, just supplied background for the jury rather than "implicat[ing]" appellants. Compare *Moore, supra*, at 819, and *Crooks, supra*, at 41–42, with *United States v. Cirillo*, 499 F.2d 872, 881 (2d Cir.), *cert. denied*, 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974). Moreover, the jurors were instructed to be "the sole judges of the credibility of witnesses and the weight their testimony deserves." *Cirillo, supra; United States v. Kaibney*, 155 F.2d 795, 797 (2d Cir. 1946). Thus, even if the failure to instruct were error, "such error would fall far short of being prejudicial." *United States v. Grizaffi*, 471 F.2d 69, 75 (7th Cir. 1972), *cert. de-*

---

**2.** For example, fire destroyed the records of one of the warehouses allegedly receiving merchandise for appellants' fraudulent scheme, thereby preventing a completely documented correlation of goods received in the fraudulent scheme with goods delivered for auction. Despite the destruction of such records, the government failed to pursue that warehouseman's offer to "go on and on" listing goods received for appellants.

**3.** The district judge instructed the jury that selling the goods "at auction sale is not, per se, [an illegal transaction], unless it is with intent to deceive or to defraud or to carry out such a scheme." Moreover, the auctioneers repeatedly testified that Henry was concerned with making a profit, with getting "top dollar," which is as consistent with an intent to liquidate the merchandise in order to repay his vendors as to defraud those vendors.

*nied,* 411 U.S. 964, 93 S.Ct. 2141, 36 L.Ed.2d 684 (1973).

## SEARCH AND SEIZURE

 Appellants claim that the district court erred in admitting evidence allegedly derived from a judicially declared[4] invalid search of Daniel's Hapeville, Georgia, apartment. The district judge precluded appellants from proving the invalidity of the Georgia search in the absence of a showing that the government derived evidence from that search, and we find no abuse of discretion in that regard. It should be noted that only Daniel moved to suppress the alleged derivative evidence. More importantly, such motion only averred the seizure of "many business and personal records of Daniel Stull, his companies and various business associates," and Henry, in his testimony at the suppression hearing, never claimed a "proprietary or possessory interest" in the materials seized. On this record, Henry therefore lacks standing to challenge the search and the evidence derived therefrom. *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), *aff'g* 452 F.2d 868 (6th Cir. 1971); *United States v. Hearn,* 496 F.2d 236, 240–41 (6th Cir.), *cert. denied,* 419 U.S. 1048, 95 S.Ct. 622, 42 L.Ed.2d 642 (1974). See *United States v. Beck,* 511 F.2d 997, 1001 n.5 (6th Cir. 1975), *petition for cert. filed,* 43 U.S.L.W. 3661 (June 11, 1975). Further, appellants never averred more than a general conclusionary taint from the Georgia search, and there was uncontradicted testimony of the investigating postal inspector that the investigation into appellants' activities was virtually complete in March, 1971, more than eight months prior to the Georgia search.

## DISCOVERY ORDER

 Appellants also claim that the government's failure to turn over certain documents in advance of trial testimony relating to such documents violated a pre-trial discovery order. A comprehensive review of the record, however, finds for the most part no merit in such claim because the discovery order applied only to appellants' written or recorded statements, scientific, mental and physical tests and examinations, the mailings underlying the twenty-one counts, and "all books, papers, documents, letters or any other evidentiary exhibits which the government proposes to offer in evidence against the defendants at . . . trial *which were obtained from the defendants or any corporations which it is alleged the defendants controlled*" (emphasis added). The objected to "papers, documents, [and] letters" were obtained from prosecution witnesses or those witnesses' business files, rather than from appellants or their corporations. There were no statements from appellants and no tests or examinations. The record fails to disclose whether two objected to documents (government exhibits 18, 21), underlying counts one and five, respectively, were turned over in compliance with the pretrial order. The government's appellate brief, however, asserts that the count letters were produced "well in advance of trial." If the government produces, and the district judge accepts, proof of that assertion on remand, then of course there was no failure to comply. If the government fails to offer proof, or the district court refuses to accept proof, of that assertion within sixty (60) days of remand, then the convictions on counts one and five will be vacated unless the district court finds that the failure to comply failed to affect the appellants' substantial rights.

Judgment of conviction on counts 2, 3, 4, 6, 7, 11, 13, 14, 15, 16, 17, 18, 19, 20, and 21 is affirmed. Judgment of conviction on counts 8, 10, and 12 is reversed. Remanded for further proceedings on counts 1 and 5 in accordance with the foregoing.

---

**4.** Daniel appended to his motion an exhibit purporting to be an order of District Judge Newell Edenfield, N.D.Ga., suppressing in a criminal proceeding pending there evidence obtained from and derived from the search of the apartment.