**UNITED STATES of America**
v.
**Orville J. JACKSON, Appellant.**
No. 22764.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 12, 1970.

Decided March 9, 1970.

Mr. Richard C. Hotvedt, Washington, D. C. (appointed by this court), for appellant.

Mr. John D. Aldock, Asst. U. S. Atty., with whom Mr. Thomas A. Flannery, U. S. Atty., and Mr. John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Mr. Roger E. Zuckerman, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, LEVENTHAL, Circuit Judge, and JAMESON *, Senior District Judge.

JAMESON, District Judge.

Appellant, Orville J. Jackson, and a co-defendant, Michael White,[1] were convicted, after a jury trial, of robbery.[2] Appellant was sentenced to a term of imprisonment of from two to six years.

On April 12, 1968, Eddie D. Abbott, a store detective at Lerner Shops in downtown Washington, observed appellant and White, both of whom he knew by sight, enter the store from Twelfth Street. The two walked close together into the children's department, where a shopper, Mrs. Miriam Oliver, was examining clothing. Abbott saw appellant

---

* Sitting by designation pursuant to the provisions of Title 28 U.S.Code Section 294(d).

1. White did not appeal the conviction.

2. 22 D.C.Code § 2901, provides: "Whoever by force or violence, whether against resistance or by sudden or stealthy seizure of snatching, or by putting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery, and any person convicted thereof shall suffer imprisonment for not less than six months nor more than fifteen years."

walk past Mrs. Oliver and while doing so bump her with his right shoulder. White "opened a black * * * shoulder pocketbook that she was carrying, and removed a wallet".

Appellant and White then walked together toward the Eleventh Street entrance of the store. Abbott called for assistance and apprehended White about 15 feet from the door. Another store security officer apprehended appellant, who was standing three or four feet from Abbott and White.

Both appellant and White were taken to the security office in the store basement. A search of White failed to produce the wallet, but it was subsequently recovered from a table of clothing "exactly where" White was apprehended. Abbott testified that he had seen appellant and White together on previous occasions in the shopping area.

Mrs. Oliver, a native of Bolivia, testifying through an interpreter, said that she had felt a "movement" and discovered that her handbag was open and a new wallet containing a little over four dollars was gone. She saw White walking rapidly away from her. She did not observe appellant. Nor did anyone other than the store detective connect appellant with White.

Jackson testified that he was in the store to purchase a gift; that he entered the store alone from Twelfth Street, went up the elevator, came down, and was going out the Eleventh Street door when he saw a commotion and was arrested. He knew White "vaguely to speak to him"; but denied being near Mrs. Oliver, bumping her, or any participation with White in the robbery.

The Government called Detective William A. Best, a member of the Metropolitan Police Department, as an expert witness. Best had been with the department for seven years, working on the robbery squad for five years, and assigned to the pickpocket squad for the last three of those years.[3] Over objection, Best was accepted as an expert witness and permitted to describe the techniques of pickpockets, working singly, in pairs, and in groups. Before Best testified as an expert witness the jury was given a cautionary instruction [4] and was again instructed in the court's charge that the jury was "not bound by the opinion of such expert. You should consider his testimony in connection with other evidence in the case and give it such weight as in your judgment it is fairly entitled to receive, taking into account the expert's training, his experience, and the extent of his knowledge on the subject".

In describing techniques followed by pickpockets working in pairs, Best testified in part: "Well it is a great advantage in working in a pair. In other words, that prop that they would need would be the other person, who they call a stall. This is simply to bump the person, to block his passage, in order that the person standing behind has an opportunity to open their bag or their pocket, or go into their pocket, or whatever." [5]

Appellant contends that the court erred (1) in admitting testimony of an expert witness to describe the modus

3. Best testified that during those three years he had done nothing but pickpocket work. He had investigated from 50 to 75 pickpocket cases, in connection with some of which he had testified in court. He had actually observed five pickpocket thefts.

4. "Ladies and gentlemen, the Court will instruct you later with respect to what weight you should give to the testimony of a so-called expert. You should understand, however, that this testimony by this officer is not testimony that relates to or purports to describe the conduct of either of these Defendants. This is general testimony as to techniques, but it has nothing to do with what either of these Defendants actually did. That will have to be established by other witnesses."

5. He explained that a "stall" is a "person in front of the victim who would block their passage by whatever means is necessary * * * to get his attention, while the person behind him can go into the pocket or pocketbook."

operandi of pickpockets working in pairs, "when the jury was perfectly capable of drawing its own inferences from the direct evidence"; and (2) in accepting Detective Best as a qualified expert.

■■■ Did the trial court abuse its discretion in admitting expert testimony on the modus operandi of pickpockets? *Wigmore* suggests that the proper test of admissibility of expert testimony is: "On this subject can a jury from this person receive appreciable help? In other words, the test is a relative one, depending on the particular subject and the particular witness with reference to that subject, and is not fixed or limited to any class of persons acting professionally." 7 Wigmore on Evidence 21, § 1923.

The standards required for the competency of an expert are set forth by McCormick as follows:

"To warrant the use of expert testimony * * * two elements are required. First, the subject of the inference must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman, and second, the witness must have such skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth. The knowledge may in some fields be derived from reading alone, in some from practice alone,[6] or as is more commonly the case, from both." McCormick, Evidence § 13, (1954).

This court in Jenkins v. United States, 1962, 113 U.S.App.D.C. 300, 307 F.2d 637, 644, after quoting from McCormick and citing other authorities, concluded that, "The principle to be distilled from the cases is plain: if experience or training enables a proffered expert witness

to form an opinion which would aid the jury, in the absence of some countervailing consideration, his testimony will be received." [7]

In the recent case of Davis v. United States, 1969, 133 U.S.App.D.C. 172, 409 F.2d 458, 460, cert. denied 395 U.S. 949, 89 S.Ct. 2031, 23 L.Ed. 469 (1969), two police officers in plain clothes saw two defendants, known to one of them to be pickpockets, get on a bus, where the first defendant bumped into the victim, and the second defendant brushed up against the victim. A key case carried by the victim was found in the pocket of one of the pickpockets. Although the victim remembered being pushed while entering the bus, he thought nothing of it at the time and did not discover the loss until he arrived at home. While this case did not involve the question of expert testimony and accordingly is distinguishable, the following language of the court is pertinent: "To these trained officers, this was a typical pickpocket set-up. * * * Conduct innocent in the eyes of the untrained may carry entirely different 'messages' to the experienced or trained observer." This language suggests that the opinion of experienced officers would be of appreciable help to laymen in understanding the techniques employed by pickpockets in a two man operation.

The only cases in this jurisdiction cited by either party in which expert testimony on modus operandi was admitted involved policy playing and lotteries. United States v. King, 1892, 9 Mackey 404, 20 D.C. 404; Ferguson v. United States, 1956, 99 U.S.App.D.C. 331, 239 F.2d 952, cert. denied 353 U.S. 985, 77 S.Ct. 1287, 1 L.Ed.2d 1144; Forte v. United States, 65 App.D.C. 355, 83 F.2d 612 (1936).[8] Cases from other jurisdictions permitting expert testimony on the modus operandi of other criminal activi-

---

6. Best testified that he had no formal schooling on pickpocketing. His description of pickpocketing techniques was based on his police experience "and working with pickpockets".

7. This rule was followed in United States v. 60.14 Acres of Land, Etc., 3 Cir. 1966, 362 F.2d 660, 667; and Norton v. Railway Express Agency, Inc., 3 Cir. 1969, 412 F.2d 112, 114.

8. See 65 App.D.C. 358.

ties include Moore v. United States, 5 Cir. 1968, 394 F.2d 818, cert. denied 393 U.S. 1030, 89 S.Ct. 641, 21 L.Ed.2d 573 (1969) (testimony of F.B.I. agent on mechanics of operation of numbers game); Shew v. United States, 4 Cir. 1946, 155 F.2d 628, cert. denied 328 U.S. 870, 66 S.Ct. 1381, 90 L.Ed. 1640 (1946) (testimony on operation of illicit still); State v. Campisi, 1957, 23 N.J. 513, 129 A.2d 880 (description of techniques and observable physical aspects of narcotics users by police expert); People v. Clay, 1964, 227 Cal.App.2d 87, 38 Cal.Rptr. 431, and People v. Hardy, 1969, Cal.App., 76 Cal.Rptr. 557 (modus operandi of till tapping); People v. Crooks, 1967, 250 Cal.App.2d 788, 59 Cal.Rptr. 39 (expert testimony of officer of vice squad on modus operandi used by prostitutes working in pairs which would result in robbing customer of one prostitute by her companion); Commonwealth v. Townsend, 1942, 149 Pa.Super. 337, 27 A.2d 462 (description of modus operandi of a larceny trick known as "flim flam" or "drop-pigeon" by police officer in charge of bureau dealing with pickpockets, con men, shop lifting, and other larcenies by theft).[9]

People v. Clay, supra, contained a comprehensive review of cases dealing with the admissibility of modus operandi testimony. In holding admissible the testimony of police officers on the modus operandi of two persons working together in till tapping, the court said in part:

"It was the testimony of the inspector on the modus operandi of till tapping which threw a spotlight on the episode as a whole and thus enabled the jury to see the possibility of a relationship between the acts of the two men. This gave meaning to the evidence and permitted the jury to ap-preciate that defendant's activities while in themselves seemingly harmless, when considered with those of Davis (the defendant who grabbed the money), might well have been part of a cleverly planned and precisely executed scheme known as 'till tapping.' Thus the inspector's testimony clearly assisted the jury in determining whether or not defendant's conduct was felonious under all the circumstances." (38 Cal.Rptr. at 436, 100 A. L.R.2d at 1428).

We conclude that the jury could "receive appreciable help" from Best's testimony and that his description of the modus operandi of the pickpockets was properly admitted.

■ The trial court did not abuse its discretion in accepting Best as a qualified expert. Best was an experienced police officer who had been a member of the pickpocket squad for three years, devoting all of his time to that work. He had investigated from 50 to 75 pickpocket cases and had observed five pickpocket thefts. He was fully conversant with the techniques employed.

■ The court followed the correct procedure in determining that Best was a qualified expert and then instructing the jury that the weight, if any, to be given his expert testimony was exclusively for the jury's determination. Jenkins v. United States, supra, 307 F.2d at 646. "Furthermore, the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous." Salem v. United States Lines Co., 1962, 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313, reh. denied 370 U.S. 965, 82 S.Ct. 1587, 8 L.Ed.2d 834.

Affirmed.

---

9. For other cases see Anno. 100 A.L.R.2d 1421, 1433 (1965).