UNITED STATES of America
v.
**Roberto L. L. DE LA GARZA,**
Appellant.
No. 71–1150.

United States Court of Appeals,
District of Columbia Circuit.

April 5, 1972.

Mr. Bruce J. Terris, Washington, D. C. (appointed by this court) was on the brief for appellant.

Messrs. Thomas A. Flannery, U. S. Atty., at the time the brief was filed, and John A. Terry, Vincent R. Alto and John S. Ransom, Asst. U. S. Attys., were on the brief for appellee.

Before McGOWAN, LEVENTHAL and MacKINNON, Circuit Judges.

PER CURIAM:

Appellant was convicted of kidnapping while armed (a knife), assault with a dangerous weapon, and possession of a prohibited weapon. The court adjudged concurrent sentences of 18 months to 6 years on the kidnapping charge, 1 to 3 years for assault with a dangerous weapon, and one year for possession of a prohibited weapon. We find no necessity for oral argument and affirm the judgment of conviction.

I

Two Mexicans allegedly committed the crime, and the victim, one Carlos Ugarte, came from a wealthy Mexican family. He was forcibly abducted from his home one evening about 10:30 by two men who brandished knives and had stockings covering their faces. They forced Ugarte at knife point to enter an automobile and they then drove him away. His hands were tied with a rope and tape was placed over glasses which were placed upon him to obscure his vision. The unsheathed knives were used to threaten Ugarte during the trip in the car. Shortly after the abduction the kidnapping was frustrated and the de-

fendant and his confederate arrested when they were stopped by two alert police officers for going through a stop sign in Rock Creek Park. In the interrogation that followed they discovered the kidnapping.

Taking that view of the evidence most favorable to the Government the following facts appear: At about 10:20 P.M. on May 3, 1970, appellant, masked with a woman's stocking over his head (in company with an accomplice, Mondragon), accosted Ugarte as he parked his car at his home at 2144 California Street, Northwest. Appellant placed a knife against Ugarte's stomach and said, "I have been waiting for you for a long time, don't scream, shout and nothing will happen to you." Mondragon was similarly masked and armed. Holding a knife in Ugarte's side they forced him into a car parked nearby, where they removed their stocking masks. Eye glasses with masking tape placed over the lenses were then placed on Ugarte and Mondragon asked appellant whether he should tie Ugarte. When he received an affirmative response, he tied Ugarte's hands behind his back with a piece of tape, and appellant drove the car away. Ugarte then stated that his mother was in New York and inquired what they wanted of him; whether they wanted money. Appellant asked Ugarte if he knew his mother's phone number, to which he replied that he did and that he knew where she could be reached. Ugarte then asked where he was being taken and appellant replied "New York City" "because he had his mother in New York" (Tr. 223). Shortly thereafter appellant drove through a stop sign in Rock Creek Park; a police officer stopped the car and discovered the kidnapping in progress with Ugarte's hands tied behind his back. At the same time the officer observed that Mondragon had an open knife and he found the knife which had been carried by appellant on the floor of the car on the driver's side of the front seat where appellant had

been seated. This knife was also open. The instant charges followed.

Even though the Government adduced testimony to prove that the kidnappers and Ugarte discussed going to New York City where Ugarte's mother was located (because she might be considered to have some of the money), appellants now contend that their principal defense was a claim that no harm was intended because they were merely carrying out an old custom in their country known as "Mexican revenge" which was "a matter of pride and involves no physical harm." In connection with this defense they now contend that the trial court improperly excluded alleged expert testimony concerning the custom in Mexico of so-called "Mexican revenge." The only other point raised on this appeal is whether an indictment may charge kidnapping as a lesser included offense of kidnapping while armed.

### II

■ Appellant was found guilty of the kidnapping while armed charge. The attack on charging the included offense of kidnapping is specious. See Sutton v. United States, 140 U.S.App.D. C. 188, 199, 434 F.2d 462, 473 (1970).

### III

■ With respect to the evidentiary point, appellant's case at trial consisted primarily of the testimony of appellant and his co-defendant Mondragon to the effect that Mondragon told appellant that he was having trouble with a man who, on one occasion, had allegedly looked peculiarly at Mondragon and his girl friend in a Georgetown night club as if to pick a fight. Shortly thereafter in a Georgetown night club the same man allegedly did the same thing again and when Mondragon left with his girl friend the man followed him. On a

third occasion when Mondragon took another girl to a dance in Georgetown, so the defense contends, as they stepped out of their car to go into a place, the same man allegedly speeded by in a car and came so close that Mondragon had to push the girl out of the way into a parked car. Mondragon claims he thereafter determined, by inquiries, that this man was named Carlos Ugarte; found his address in the telephone book; and on May 3rd asked appellant to go with him to see the man so he could tell him he was confusing Mondragon with someone else and straighten out the matter. Mondragon thought there might be a fight, but he did not expect trouble. He did not intend to do the man any harm and when his car was stopped by the police he had just realized that Ugarte was the wrong person.

Apropos the claim that he did not intend to do Ugarte any harm, appellant contended that they were merely carrying out an old Mexican custom known as "Mexican revenge" which defendant alleged meant that you confronted the person rather than reporting an incident to the police. Testifying on this subject on cross examination, appellant stated:

> You understand Mexican revenge? Do you want me to tell you? Fight. But not with the knife. (Tr. 172)

Thereafter appellant additionally stated:

> I take the stockings [the masks] just because maybe if he [Mondragon] have some physic [sic] fight, Mexican revenge we call it, I don't want this guy to see me. (Tr. 173).

The court ruled that evidence by defendants on this point was admissible (Tr. 141, 144), but decided that an American Catholic priest and college professor who had spent a year in Mexico on a teaching assignment was not qualified to testify as an expert (Tr. 138–144).[1] His proffered testimony was

1. THE COURT: I think if we are going to hear anything about Mexican revenge, I will hear it from the witnesses themselves rather than from this man. (Tr. 141)

that Mexican revenge "is a matter of pride and involves no physical harm" (Tr. 144); "it is a cultural thing in Mexico and not a crime" (Tr. 138).[2] There was thus, even by appellant's claim, a substantial difference between the proffered testimony of the priest concerning the custom as he understood it in Mexico, and appellant's testimony as to his personal understanding of it. As between these two conflicting descriptions of the custom, it was clearly appellant's understanding that was the only material testimony since it was appellant's personal intent in committing the kidnapping that was in issue. On this point the defendants were permitted complete freedom to testify since their personal testimony was the best evidence of their intent. The proffered testimony of the priest had practically no relevance to that issue, and the trial court was within its discretion in excluding the testimony of the priest concerning the general concept of "Mexican revenge," and thus limiting the defendants to their own testimony concerning that custom. Both appellant and his co-defendant testified about their understanding of "Mexican revenge" and, what is more significant, about their understanding of its application to their situation. This was not a matter that was complicated or outside the range of understanding of a layman. The conclusion of the trial judge that this was a subject on which the jury did not need expert help was a matter within his discretion.[3]

We thus find no error in the exclusion by the trial court of additional testimony concerning the custom, particularly since it conflicted with appellant's testimony thereon.

Affirmed.

2. The issue here was not whether the questioned acts were a crime in Mexico but whether they were a crime in the District of Columbia. The claim of "Mexican revenge" went to the question of the intent of the defendants and the

court ruled that they could testify thereon. (Tr. 138–144)

3. United States v. Jackson, 138 U.S.App. D.C. 143, 425 F.2d 574 (1970); 7 Wigmore, Evidence § 1923 (3d ed. 1940).