Shirley L. HOOKS, a/k/a Linda Clinton, Appellant,

v.

UNITED STATES, Appellee.

Eddie J. MATHIS, Appellant,

v.

UNITED STATES, Appellee.

No. 9790.

District of Columbia Court of Appeals.

Argued Jan. 5, 1977.

Decided May 23, 1977.

William J. Mertens, Public Defender Service, Washington, D. C., for appellant, Hooks. Frederick H. Weisberg, Public Defender Service, Washington, D. C., also entered an appearance.

Charles J. Broida, Columbia, Md., appointed by this court, for appellant, Mathis.

William J. O'Malley, Jr., Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Theodore A. Shmanda, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY and GALLAGHER, Associate Judges, and PAIR, Associate Judge, Retired.*

PAIR, Associate Judge, Retired:

Appellants Hooks and Mathis were convicted in a jury trial of robbery (D.C.Code 1973, § 22–2901). Three issues are before this court on appeal: (1) whether Hooks was deprived of her Sixth Amendment right to effective assistance of counsel because of an alleged ethical conflict affecting her attorney; (2) whether the trial court erred in admitting expert testimony concerning the modus operandi of pickpocket teams; and (3) whether there was sufficient evidence presented at trial to support the convictions. We affirm.

In the afternoon of October 11, 1974, the driver of a Metro bus observed Hooks and Mathis as they participated in the acts which brought about their arrest and indictment for robbery. Shortly after leaving a bus stop at a busy downtown intersection, the driver's attention was attracted by unusual activity near the front door of the bus. Glancing to his right, he observed three persons standing in the aisle near the door. Two of them were later identified as Hooks and Mathis. "Sandwiched" between them was a Mrs. Kaur who became the complaining witness. Mathis, who was positioned at the front of Mrs. Kaur, was observed to push back against her as Hooks, who was positioned at the rear, extracted money, in the form of bills, from Mrs. Kaur's handbag. Hooks then reached around Mrs. Kaur and thrust the bills into something Mathis was holding against his chest.

The driver stopped the bus, retrieved the money from Mathis and alerted Mrs. Kaur, who checked her purse and discovered that some thirty dollars had been removed. Hooks and Mathis were not permitted to leave the bus and upon arrival of a police officer they were placed under arrest. Mrs. Kaur identified the bills retrieved from Mathis as money she had withdrawn from her bank before boarding the bus.

We consider first Hooks' Sixth Amendment claim that she was denied effective assistance of counsel. It appears that a Public Defender Service (PDS) attorney was appointed to represent Hooks, while Mathis was represented by private appointed counsel. The day before the trial was scheduled to commence, Hooks' attorney learned for the first time that Mathis was represented by a different PDS attorney in two unrelated matters scheduled for presentment to the grand jury.

It was represented that Mathis' PDS attorney had been exploring the possibility of a plea bargain involving all pending

* This case was originally heard before Kelly, Fickling and Gallagher, Associate Judges. Judge Fickling died on March 6, 1977, and by order of court March 18, 1977, Pair, Associate Judge, Retired, was substituted in his place.

charges against his client. In the meantime, the government offered a plea bargain concerning the robbery charges on which Hooks and Mathis were about to be tried. It is unclear from the record whether, under the proposed plea bargain, Mathis would have been required to enter a plea in the two unrelated matters before Hooks would be allowed to enter a guilty plea in the robbery case. It is clear, however, that both Hooks and Mathis would have been required to enter a plea of guilty in the robbery case before they could receive the benefit of the government's offer. In any event, the proposed plea bargain in the robbery case was rejected by both Hooks and Mathis, pleas of not guilty were entered, and the cases proceeded to trial.

Hooks now insists that the plea bargain offered by the government in the case at bar involved all charges pending against Mathis, thus giving rise to an ethical conflict. Such ethical conflict, says Hooks, prevented her attorney from rendering effective advice regarding the government's offer since, for purposes of that offer, Mathis was also represented by a PDS attorney in the two unrelated matters.[1]

■ We reject at the outset Hooks' contention that because she was represented by a PDS attorney in the robbery case and Mathis was also represented by a PDS attorney, but in two unrelated matters, there was a per se violation of the Sixth Amendment right to effective assistance of counsel. Assuming arguendo that the proposed plea bargain contemplated pleas by Mathis in the two unrelated cases and that a joint representation resulted, absent any showing that Hooks was prejudiced it is difficult to understand how it can be said that she was deprived of effective assistance of counsel. *See Hall v. United States*, D.C.App., 236

A.2d 57 (1967); *United States v. Mackin*, 163 U.S.App.D.C. 427, 437, 502 F.2d 429, 438–39, *cert. denied*, 419 U.S. 1052, 95 S.Ct. 629, 42 L.Ed.2d 647 (1974); *cf. McIver v. United States*, D.C.App., 280 A.2d 527, 531 (1971).

We have been unable to find from our examination of the record that Hooks was prejudiced by reason of any restraint on her attorney in the discharge of his professional responsibilities in respect to the proposed plea bargain. *Hall v. United States, supra; United States v. Mackin, supra.*

■ We turn next to both appellants' contention that the trial court erred in admitting expert testimony concerning the modus operandi of pickpocket teams. The testimony in question was given by a Metropolitan Police Department detective sergeant who is an acknowledged expert in the area. We find no error in the admission of his testimony, particularly in light of appellant Mathis' protestation that he was an innocent bystander when the money was thrust upon him by appellant Hooks. In such a situation, it is well-settled that expert testimony may be employed so that the jury can appreciate the possible relationship between seemingly innocent acts. *United States v. Jackson*, 138 U.S.App.D.C. 143, 425 F.2d 574 (1970). Appellants' reliance on *Quarles v. United States*, D.C.App., 308 A.2d 773 (1973), is misplaced. Read in context, that case stands for the proposition that expert testimony coupled with mere presence at the scene of the crime will not, standing alone, support a conviction of aiding and abetting in a pickpocket scheme. In the instant case, however, the testimony of the bus driver and circumstantial evidence established an involvement by each appellant that went beyond mere presence.

---

1. Disciplinary Rule 5–105 of the Code of Professional Responsibility provides in part:

   (A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment

   . . . .

   (B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client. . . .

   . . . . .

   (D) If a lawyer is required to decline employment or to withdraw from employment under DR5–105, no partner or associate of his or his firm may accept or continue such employment.

We also find no error in the limiting instruction given the jury respecting the weight to be given expert testimony.[2] *United States v. Jackson, supra,* 138 U.S. App.D.C. at 144 n.4, 425 F.2d at 575 n.4.

The final contention, that of Mathis, is that the evidence was insufficient to go to the jury on the issue of his involvement in the pickpocket scheme. We have said repeatedly that when, after a jury verdict of guilty, we are called upon to assess the sufficiency of the evidence we must give the government the benefit of all reasonable inferences to be drawn therefrom. *Calhoun v. United States,* D.C.App., 369 A.2d 605 (1977); *Richardson v. United States,* D.C.App., 366 A.2d 433 (1976); *Arnold v. United States,* D.C.App., 358 A.2d 335, 341 (1976); *Williams v. United States,* D.C. App., 357 A.2d 865 (1976); *Chaconas v. United States,* D.C.App., 326 A.2d 792, 797 (1974); *United States v. Bolden,* 169 U.S. App.D.C. 60, 64–65, 514 F.2d 1301, 1305–06 (1975); *Curley v. United States,* 81 U.S. App.D.C. 389, 160 F.2d 229, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). Moreover, a jury's resolution of factual issues may not be overturned unless we can be satisfied that "on the basis of the evidence no reasonable mind could fairly have found the defendants guilty without a reasonable doubt. . . ." *United States v. Bolden, supra,* 169 U.S.App.D.C. at 64–65, 514 F.2d at 1305–06. In this connection, no distinction is required to be made between direct and circumstantial evidence. *United States v. Mackin, supra,* 163 U.S.App.D.C. at 439, 502 F.2d at 441.

We hold that the testimony of the bus driver, that of the expert witness, and the circumstantial evidence, when considered as a whole, was sufficient to support the convictions.

*Affirmed.*

2. The trial court's instructions to the jury included the following charge:

> We had one expert testify in this case, Sgt. Eldridge, and I would like to instruct you now that an expert in a particular field is permitted to give his opinion in evidence.

You are not bound by the opinion of such an expert. You should consider his testimony in connection with the other evidence in the case and give it such weight as in your judgment it is fairly entitled to receive.