Robert A. WHITE, Appellant,

v.

UNITED STATES, Appellee.

Nos. 82–999, 84–117.

District of Columbia Court of Appeals.

Argued Oct. 16, 1984.

Decided Nov. 26, 1984.

---

**2.** We reject petitioner's claim of age discrimination because it is not supported by any evidence.

R. Scott Goldman, Washington, D.C., appointed by this court, for appellant.

Kenneth J. Melilli, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. DiGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before MACK, FERREN and BELSON, Associate Judges.

MACK, Associate Judge:

Following a jury trial, appellant Robert A. White was convicted of armed robbery (D.C.Code §§ 22–2901, –3202 (1981)), kidnapping while armed (D.C.Code §§ 22–2101, –3202 (1981)), rape while armed (D.C. Code §§ 22–2801, –3202 (1981)), unauthorized use of a vehicle (D.C.Code § 22–2204 (1981)), and carrying a pistol without a license (D.C.Code § 22–3204 (1981)). Appellant was sentenced to consecutive terms of imprisonment of 3–10 years for armed robbery, 3–9 years for kidnapping while armed, 6–8 years for rape while armed, and 1–3 years for unauthorized use of a vehicle, and to a concurrent term of imprisonment of 1–3 years for carrying a pistol without a license. Appellant filed a motion with the trial court under D.C.Code § 23–110 (1981) to set aside his conviction on the grounds that he was denied effective assistance of counsel by his trial attorney's failure to interview a potential witness and to locate a certain document in support of an alibi defense. The trial judge denied this motion without holding an evidentiary hearing. An appeal from that denial has been consolidated with the direct appeal of appellant's convictions.

Appellant raises several issues on appeal. He argues first, that there was insufficient

evidence to sustain his convictions for armed robbery, kidnapping and rape; second, that a delay of 13 months between his arrest and trial denied him his right to a speedy trial; and third, that his trial counsel was ineffective and the trial court improperly denied him an evidentiary hearing on his § 23–110 motion raising this claim. For the reasons set forth below, we affirm.

## I. *Sufficiency of the Evidence*

At some time after midnight on April 27th, 1981, the complainant parked a white Volkswagen Rabbit hatchback automobile belonging to her husband on T Street near 19th Street, N.W. As she was removing something from the rear of the car, someone came up behind her, grabbing her arms while putting a gun to her head, and demanded the keys to her car. The assailant pushed complainant into the back seat of the car, where her eyeglasses flew off. Then either he put her, or she got into, the front seat, and he drove off to a dark area of Rock Creek Park, where he raped her. Following the rape, the assailant drove around for about an hour, and then stopped in an alley, where he got out of the car and emptied the pockets of complainant's jeans, taking $16 or $17 and a Timex watch. He then forced complainant into the rear hatch area of the VW.

The assailant then continued driving, and after a period of time complainant heard him picking up a prostitute with the offer, "hey, baby, how is $40." Following sex in the car, the assailant threatened the prostitute, asking her for money; the prostitute then got out and the assailant drove off. The car stopped a second time, and complainant heard the voice of her assailant make the identical offer to a second prostitute, "hey, baby, how is $40," following which a second woman got in the car. Complainant then felt the car accelerate; the car was stopped by the police and complainant was set free.

Metropolitan Police Officer Kenneth Roden testified at trial that at 3:10 a.m. on April 27th, 1981, he observed the driver of a white Volkswagen making an illegal left turn at 14th and New York Avenue, N.W. He attempted to pull the car over, but it accelerated, running several red lights. Following a chase, the driver of the car pulled into a parking lot, stopped the car and ran off. Roden broadcast a description of appellant and pointed Officers Valldejuli and Lund, who arrived at the scene, in the direction of the driver's escape route. Appellant was apprehended by those officers within 200 feet of the VW, crouching in a doorway. At trial, he admitted that he was the driver of the car. A gun was recovered from the gutter in front of appellant's hiding place; at trial, appellant admitted that the gun was his. The gun was partially concealed by a black leather glove; the matching glove was found in the Volkswagen, and complainant testified that she had seen her assailant don one of the gloves during the abduction. Some money and a Timex watch were recovered from appellant; complainant identified the watch as hers. A passenger in the VW was identified as Carmen Brown, a prostitute working in the 14th street area.

Complainant could not identify appellant as her assailant at trial. She testified that whenever she tried to look at him, he forced her to look the other way; that her eyesight was very poor without her glasses; and that during the rape and at the alley stop she could not see her assailant's face because it was very dark. At the time of his arrest, appellant was wearing a tan jacket with a blue stripe; at trial complainant did identify her assailant as wearing a jacket with a stripe, but she testified that she thought it was a dark jacket with a light stripe. Even though complainant could not visually identify her attacker, however, she could identify his voice, and she testified that she heard her assailant's voice during the entire period she was imprisoned in the hatch area. She further testified that, other than the time of the sexual encounter with the first prostitute, the car was never stopped while she was locked in the back of the vehicle.

At trial, appellant's defense was essentially that he had arrived on the scene at the end of the abduction, following the rape and the incident with the first prostitute. He testified that he had initially come into the District from Maryland that evening to accompany his girlfriend to a city-run shelter, where she was staying. After dropping her off, he stated, he "more or less [was] running around in the 14th street area," until he found the white Volkswagen in an alley off 14th street, where it was parked, unlocked, with the keys in the ignition. He denied ever having seen complainant, and testified that he had heard no sounds coming from the back of the car. He said that he found the Timex watch and some change on the floor of the vehicle, which he put in his pocket, and he drove the car to 14th and F Streets, N.W., where he picked up a prostitute, Carmen Brown. Shortly thereafter, he made an illegal left turn, and was chased, and ultimately apprehended, by the police.

■ In assessing appellant's claim that the evidence was insufficient to support his convictions for armed robbery, kidnapping and rape, we must view the evidence in the light most favorable to the government, and must give the government the benefit of all reasonable inferences. *Miller v. United States*, 479 A.2d 862, 864 (D.C.1984) (citing *Hooks v. United States*, 373 A.2d 909, 912 (D.C.1977)). Although, due to complainant's inability to identify her assailant at trial, the evidence against appellant on these three charges was circumstantial, the cumulative weight of this evidence is more than sufficient to sustain the jury's finding that appellant was guilty of these offenses beyond a reasonable doubt. Complainant's abductor held a gun to her head; close to the spot appellant was apprehended, police found a handgun appellant admitted was his. Complainant testified that her assailant had taken one of her husband's black leather gloves from the car and had put it on; appellant had covered the gun with a black leather glove. Complainant identified the

clothing worn by her assailant as a jacket with a stripe, and appellant was apprehended wearing such a jacket. Complainant's incorrect description of the jacket's color was made not at the scene, but upon cross-examination by counsel for the defense some 13 months following the events in question. Complainant testified that her attacker had emptied her pants pockets and taken the items found there: a Timex watch, $16 or $17, and some change; the watch was found on appellant's person, along with approximately $80 and change. Further, appellant's version of events, that he arrived on the scene after the first prostitute was dropped off and before the second was picked up, was rebutted by complainant's testimony that she heard her assailant's voice proposition both prostitutes in exactly the same way. In addition, appellant's statement that he found the Volkswagen parked in an alley is contradicted by complainant's statement that, apart from the encounter with the first prostitute, the car was never stopped for any period of time. In sum, there was ample evidence presented in this case upon which a jury could find appellant guilty of armed robbery, rape and kidnapping beyond a reasonable doubt.

## II. *Right to a Speedy Trial*

■ Appellant's second contention on his direct appeal is that the delay of 13 months between his arrest and trial violated his sixth amendment right to a speedy trial. We reject this contention as well. It is true that a delay between arrest and trial greater than one year establishes a prima facie case of a speedy trial violation, *Branch v. United States*, 372 A.2d 998, 1000 (D.C.1977), and the government therefore has the burden of establishing that appellant's right to a speedy trial was not violated. *Miller, supra*, 479 A.2d at 865–66 (citing *Parks v. United States*, 451 A.2d 591, 600 (D.C.1982), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2123, 77 L.Ed.2d 1303 (1983)). A review of the record below reveals, however, that approximately six and one-half months of the delay in this case was the

result of the defendant's unavailability due to the pendency of charges against him in Maryland. This time is counted against appellant, not against the government, *Forbes v. United States*, 390 A.2d 453, 456 (D.C.1978). An additional ten days' continuance is also chargeable to appellant, since it was granted at appellant's request in order to give him time to evaluate the government's plea offer. The normal sequence of events in a criminal trial accounts for all but one week of the remaining delay. This period is counted against the government but carries little weight. *Smith v. United States*, 379 A.2d 1166, 1167 (D.C.1977). The one week's continuance was granted the government in order to accommodate a government witness, and although counted against the government for speedy trial purposes, was not a deliberate attempt to delay in order to secure a tactical advantage, *see Miller, supra*, 479 A.2d at 866 (citing *Barker v. Wingo*, 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972)). Thus, we find no violation of appellant's right to a speedy trial in this case.

### III. *Ineffective Assistance*

Appellant also appeals from the trial court's denial of his motion to vacate sentence pursuant to D.C.Code § 23–110 (1981). In that motion, appellant alleged that his sixth amendment right to the effective assistance of counsel was violated by trial counsel's failure to take steps to interview a potential witness and to locate a certain document. In an opinion dated January 12, 1984, the trial court found that "the allegations in the motion belie the record," and therefore denied the motion without holding an evidentiary hearing. Memorandum Opinion at 3. Appellant also presses his ineffective assistance of counsel claim on direct appeal. We find both contentions to be without merit, and affirm the ruling of the trial court.

In *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a con-

stitutional standard for both direct and collateral review of ineffective assistance of counsel claims. The Court held:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

104 S.Ct. at 2064. The *Strickland* test has two components: "First, the defendant must show that counsel's performance was deficient ... The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 2064–65. The second requirement is that "the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 2064. In sum, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 2069.

Appellant contends that his trial counsel was ineffective because counsel failed to anticipate, and prepare, an alibi defense. In an affidavit submitted to the trial court, Lisa Parkins, appellant's girlfriend, states that she remembers that appellant left her at a shelter on Reservoir Road after midnight on April 27, 1981, although she could not specify a time. Parkins further states that the shelter required her to sign in, and that the sign-in register could have established with precision the time appellant left Reservoir Road. In an affidavit submitted by appellant, he states that he told trial counsel that he had left Parkins at the shelter after midnight, but admits that "[a]t that time, I didn't think that that piece of information was of great importants [sic]." Appellant does not state that he told counsel of the existence of the sign-in register. The shelter is now closed, and the records are unavailable; and appellant does not state in his affidavit that the records would have been available to coun-

sel at the time of the trial had he attempted to locate them.

At trial, the government asked the complainant, "do you recall where you were early morning hours or around midnight from April 26, 1981 into April 27, 1981?", to which complainant responded that at around that time she had parked her husband's car at 19th and T streets. The government further asked, "now just after midnight, where were you headed?", to which complainant responded that she was going to see her husband.

Appellant apparently contends that, had counsel interviewed Parkins, he would have discovered the existence of the sign-in register, and could have produced both Parkins and the register at trial to establish an alibi defense for appellant, or perhaps to impeach the credibility of complainant. Appellant's own actions at trial, however, belie his present claim. Appellant heard complainant's testimony, and was thereafter asked on direct examination where he had been "from approximately 12 o'clock in the evening until later in that morning—the morning of the 27th, 1981," to which he responded: "I was just—Let me see, running around, more or less running around in the 14th street area.... [A]t first, when I first came to the District was to drop a girlfriend of mine off.... After she went in, I just more or less was just roaming around." The defense in this case was presented a day after complainant testified; appellant heard complainant's testimony, and had an alibi defense occurred to him at that point he could have asked trial counsel to call Parkins the next day on behalf of the defense. Thus, appellant's own testimony and behavior at trial contradict his assertion that he told counsel that he was at the shelter after midnight on the night in question.

 Under *Strickland, supra,* trial counsel "has a duty to make reasonable investigation" in preparing a defense, but counsel's "actions are usually based, quite properly, on ... information supplied by the defendant. In particular, what investi-

gation decisions are reasonable depends critically on such information." 104 S.Ct. at 2066. The vagueness of appellant's affidavit, together with his statements and lack of action at trial, belie his post hoc attempt to blame his trial counsel for his lack of an alibi defense.

 We thus find no supportable claim of ineffective assistance of counsel in this case, and in addition affirm the trial court's decision to deny appellant an evidentiary hearing on his motion for a new trial based on this claim. No hearing is required under section 23–110 if, as in this case, the record below "contain[s] data which belie a prisoner's claim, and such contradiction is not susceptible of reasonable explanation...." *Pettaway v. United States,* 390 A.2d 981, 983 (D.C.1978). Further, a hearing "is not warranted if the allegations are vague and conclusory, are wholly incredible, or do not merit relief even if true." *McClurkin v. United States,* 472 A.2d 1348, 1353 (D.C.1984); *see Smith v. United States,* 454 A.2d 822, 824 (D.C.1983); *Gregg v. United States,* 395 A.2d 36, 39 (D.C.1978). Thus, no hearing was here required because even if the facts as stated by appellant were true, appellant would not be entitled to relief under section 23–110(a). Since complainant was not able to specify the time of the assault with precision, there is no necessary contradiction between appellant's claim that he was at a location 2–3 miles from the place of the crime after twelve, and complainant's testimony that she was abducted at some point after midnight or in the early morning hour of April 27, 1981. In addition, counsel's actions in this case, as described by appellant, certainly cannot be characterized as "so undermin[ing] the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," under *Strickland, supra,* 104 S.Ct. at 2064. In sum, based upon our review of the record we are satisfied that the trial court did not err in declining to

hold an evidentiary hearing on appellant's motion.

*Affirmed.*