Curtis L. WATSON, Appellant,

v.

UNITED STATES, Appellee.

Nos. 83–996, 83–1136 and 83–1150.

District of Columbia Court of Appeals.

Argued March 13, 1985.

Decided April 8, 1986.

Mark S. Carlin, Public Defender Service, with whom James Klein, Public Defender Service, Washington, D.C., was on brief, for appellant.

Thomas J. Tourish, Jr., Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Judith Hetherton, Wendy Bebie, and Harry R. Benner, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEBEKER and MACK, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge.

These consolidated appeals have two facets. First, we have for consideration a test on the issue of ineffectiveness of counsel while on appeal. Secondly, we review a challenge to separate orders of the Superior Court dealing with the issue of ineffectiveness of trial counsel and denying collateral relief from prior judgments of conviction. We deny the motion to recall our mandate, which raises the claim of ineffective counsel on appeal, and we affirm the judgments.

I

To understand this case, a review of its procedural history is helpful. Appellant was indicted in 1976 on several charges related to two separate incidents occurring at 1926 Quincy Street, N.E.: the May 30, 1976 assault on Richard Knight and the June 6, 1976 shootings of Cynthia Durham and Robert Swearinger. The matters came to trial in 1977, but a mistrial was soon declared because several jurors had been exposed to publicity surrounding the murder of Timothy Reeves, which had also taken place at the Quincy Street premises.

Appellant was later indicted for the Reeves' murder and a related weapons charge. The trial court subsequently granted the government's motion to consol-

idate this indictment with the earlier indictment covering the 1976 assaults.[1] Following a jury trial, appellant was convicted on counts contained in both indictments, *viz.*, first-degree murder while armed, D.C.Code §§ 22–2401, –3202 (1981), carrying a pistol without a license, *id.* § 22–3204, two counts of first-degree burglary while armed, *id.* §§ 22–1801(a), –3202, assault with a dangerous weapon, *id.* § 22–502, and two counts of assault with intent to kill while armed, *id.* §§ 22–501, –3202.[2] Following the denial of his motion for a new trial, appellant was sentenced to an aggregate term of thirty years to life imprisonment.

On appeal, appellant's convictions were affirmed. *Watson v. United States*, Nos. 13796, 13815, Memorandum Opinion and Judgment (D.C. Nov. 5, 1979) (unpublished). As grounds for reversal, he had assigned three errors: (1) the trial court had prejudiced his case by interrupting defense counsel and commenting on counsel's performance; (2) the court improperly consolidated the indictment charging first-degree murder with the indictment containing the charges related to the 1976 assaults; and (3) the court failed to grant a judgment of acquittal on the first-degree murder charge despite insufficient evidence of premeditation. This court rejected each contention.

On the issue of consolidation, appellant had maintained on appeal that the assaults and the murder were not sufficiently connected to warrant a joint trial. In our decision, we concluded that consolidation of the indictments for a single trial did not rise to the level of plain error, as would have been necessary for reversal because counsel did not object to the consolidation either before or during trial. *See Watts v. United States*, 362 A.2d 706, 708–09 (D.C. 1976) (en banc). In our opinion, we noted that prior to trial, counsel did object to joinder of the cases against appellant and Joan Swearinger. We also noted that in appellant's motion for a new trial it was argued that consolidation of the indictments had been improper. We held that "the argument is sufficiently strong for consolidation ... that the trial court did not commit plain error by failing, absent objection, to sever the murder and assault charges." *Watson, supra*, Memorandum Opinion and Judgment at 7 (citations omitted).[3]

Regarding the trial court's denial of a judgment of acquittal, appellant had argued that the government's evidence was not sufficient to support his first-degree murder conviction. More specifically, he had contended that proof of premeditation was lacking. We disagreed, however, finding "facts ample to permit a reasonable jury to find guilt beyond a reasonable doubt." *Watson, supra*, Memorandum Opinion and Judgment at 7 (citations omitted). This court thereby concluded that the evidence was sufficient for guilt as a matter of law. And, on the specific question of premeditation, we concluded that there was sufficient circumstantial evidence to permit

---

1. The court severed the trial of Joan Swearinger, codefendant to charges under the original indictment. *See* D.C. Code § 23–313 (1981).

2. The cited District of Columbia Code sections are those currently in effect. Section 22–3202, which provides for an additional penalty for committing a crime while armed, has been amended and is now codified at § 22–3202 (1981 & Supp.1985).

3. We stated:
   We agree with appellant that, on the facts here, consolidation of the murder charge with the two assault charges (which are properly joinable) cannot be justified by any of the five exceptions to the general bar against "other crimes" evidence set forth in *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964). However, if "the evidence of each crime is simple and distinct," *Drew* also permits consolidation of two indictments for trial "even though [other crimes] evidence might not have been admissible in separate trials." *Id.* at 17, 331 F.2d at 91. We conclude that the argument is sufficiently strong for consolidation on this basis that the trial court did not commit plain error in failing, absent objection, to sever the murder and assault charges. *Watson, supra*, Memorandum Opinion and Judgment at 6–7 (footnote and other citations omitted).

the jury to "infer premeditation from the surrounding facts and circumstances." *Id.* at 8 (citations omitted).[4]

Shortly before this court had decided appellant's direct appeal, he collaterally attacked his convictions by filing, *pro se*, a motion to vacate his sentence pursuant to D.C.Code § 23–110 (1981).[5] By his motion, appellant sought relief primarily on the basis of ineffective assistance of trial counsel. The trial court subsequently appointed the Public Defender Service to represent appellant in the proceedings and the Public Defender then filed a comprehensive § 23–110 motion. In addition to challenging the effectiveness of trial counsel, on grounds raised in appellant's *pro se* motion as well as additional grounds, the latter motion (the § 23–110 motion prepared by the Public Defender) prayed for vacation of the judgments on the ground that appellant had been denied effective assistance on his direct appeal. During an evidentiary hearing on the matter in February 1982,[6] the trial court ruled on the authority of *Streater v. United States*, 429 A.2d 173, 174 (D.C.1980) (per curiam), *appeal dismissed and cert. denied,* 451 U.S. 902, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981), that it had no jurisdiction to consider a claim concerning the adequacy of counsel on appeal. However, the court did hear testimony on the claim that appellant had been denied effective *trial* counsel and, after taking the case under advisement, ruled in August 1983 that it was without merit. Appellant then filed separate notices of appeal from this ruling: one in the assault cases (Appeal

No. 83–1150) and one in the murder case (Appeal No. 83–996).

Later that month, appellant sought relief from his convictions by a different collateral procedure. Pursuant to D.C.Code § 16–1901 (1981), appellant, acting *pro se,*[7] filed a petition in the Superior Court for a writ of habeas corpus alleging that he was denied effective assistance of counsel at the pretrial hearing at which the court consolidated for trial the separate indictments. Appellant maintained that his court-appointed counsel was not present at the pretrial hearing, which he characterized as a "most critical stage of the proceedings," and that therefore he was being held in violation of the Constitution. *See id.* § 16–1901(a). The trial court ruled otherwise, however, and denied appellant's habeas corpus petition, concluding that it would not consider those matters which arose from cases already reviewed by this court. Appellant then filed a notice of appeal from this decision (Appeal No. 83–1136).

Several months later, appellant filed a motion in this court to recall the mandate affirming his convictions on direct appeal (Appeal Nos. 13796 and 13815).[8] Appellant requested that we "either remand for resentencing or permit the out-of-time filing" of a brief which he claims should have been filed in his direct appeal. To this end, appellant argues in his motion to recall the mandate that he had been denied the effective assistance of his retained appellate counsel. He principally faults appellate counsel for failing to point out to this court the prejudicial impact that consolidation of

---

**4.** As to appellant's first assignment of error, this court held that the trial court's interruptions of defense counsel were "within acceptable bounds." *Id.* at 4 (footnote omitted). We held further that the court's comments on counsel's performance were not prejudicial. *Id.* at 5. Neither issue is in any way implicated here.

**5.** Appellant amended this *pro se* motion approximately two months after his convictions were affirmed on direct appeal.

**6.** The § 23–110 motion prepared by the Public Defender was filed in January 1981.

**7.** This additional petition was filed *pro se* sometime *after* the Public Defender Service entered an appearance on appellant's behalf. It is not apparent how it came about that this particular action was *pro se,* even though he was then ably represented by the Public Defender Service.

**8.** Our mandate was issued on November 28, 1979, a few weeks after the decision was rendered.

We note that appellant is represented by the Public Defender in the proceedings before this court on his motion to recall and appeals from the denial of collateral relief.

the indictments had on his trial. In this respect, appellant contends that

> [i]f this court had been informed of the manner in which the government had used the evidence of the assaults at ... [his] trial, it could not have found that the evidence of the assaults and the murder was "simple and distinct" or that appellant was not prejudiced by their joinder.

It is further argued that appellate counsel was ineffective in that he failed to challenge on appeal the sufficiency of evidence from an identity standpoint, *i.e.,* that appellant was the person who murdered Timothy Reeves. Thus, appellant asserts that to this day he has been denied "meaningful review" of his convictions.

This brings us to the issues at hand.[9] The upshot is we now have pending before us for decision (1) appellant's motion to recall the mandate, which is predicated on the assertion that *appellate counsel* on direct appeal was ineffective because he failed (a) to effectively argue that it was reversible error by the trial court to consolidate the indictments for trial or fail to sever the cases when the prejudice of joinder became apparent, and (b) to raise the sufficiency of evidence issue on the first-degree murder conviction (from the standpoint of identity); (2) appellant's direct appeals from orders denying his various requests for collateral relief (§ 23–110 motions and habeas corpus petition) which, together, are premised on the claim that appellant's *trial counsel* was ineffective principally because he failed to (a) oppose consolidation of the indictments against appellant, (b) move for a severance or a mistrial when it became apparent that consolidation was prejudicial, (c) object to the government's use of "highly prejudicial other crimes evidence," and (d) adequately prepare for appellant's trial by, for example, not obtaining hospital records showing that a key government witness was intoxicated on the night of the 1976 shootings.

## II

Appellant's motion to recall the mandate is predicated on a claim that he was denied the effective assistance of counsel on his direct appeal. To reiterate, counsel's claimed ineffectiveness was his failure to (a) explain to this court "how appellant was demonstrably prejudiced by the improper consolidation [of the indictments]," and (b) raise the insufficiency of evidence.[10] Recognizing that *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985), establishes a Fourteenth Amendment due process right to effective assistance of an attorney, whether retained or appointed, on a "first appeal" as of right, appellant contends in his motion that we should either remand for resentencing or

---

9. On August 9, 1984, appellant filed a brief on the merits of Appeal Nos. 83–996 and 83–1150 (challenging the disposition of his § 23–110 motion), and 83–1136 (challenging the trial court's denial of his habeas corpus petition). By an order of the same date, this court deferred the government's motion to consolidate these appeals with those resurrecting appellant's previous appeal (Appeal Nos. 13796 and 13815) until a decision had been rendered on the motion to recall the mandate. We denied appellant's motion to recall the mandate in Appeal Nos. 13796 and 13815 on December 12, 1984. However, on February 1, 1985, in light of the Supreme Court's recent decision on ineffective assistance of appellate counsel, *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), and in recognition that in appropriate instances this court may recall its mandate at any time, we entered an order permitting counsel to address issues arising from the prior appeals in their supplemental briefs and argument.

10. Appellant also argues that his counsel on appeal was ineffective because he failed to challenge *trial counsel's* effectiveness by filing in the Superior Court a motion to vacate his sentence under § 23–110. In appellant's words, "[t]his failure prevented the trial court from deciding before the direct appeal was resolved whether trial counsel's error[s] [were] unreasonable and sufficiently prejudicial to warrant a new trial." Thus, appellant complains that appellate counsel did not ensure the prompt resolution of his claim that trial counsel was inadequate, a claim that was not finally disposed of until August 1983. Be that as it may, appellant's claim that his trial counsel was ineffective was ultimately adjudicated by the trial court.

reopen his appeal.[11] This would necessarily require that we first recall the mandate affirming his convictions.

■ Before reaching the merits of appellant's due process claim, we must dispose of the procedural matter of how one may challenge previous counsel's effectiveness on appeal. The approach taken by appellant, filing with this court a motion to recall the mandate, is a proper one. D.C. App.R. 41(c), which became effective on January 1, 1985, provides:

RECALL OF MANDATE: In any appeal from a judgment of conviction in a criminal case, no motion to recall a mandate based on the asserted failure of counsel to represent the appellant effectively on appeal shall be considered by the court unless the motion is filed within 180 days from the issuance of the mandate.

Appellant's motion to recall the mandate was filed before Rule 41(c) became effective. He was not required, therefore, to comply with the 180-day provision of our rule.[12]

Rule 41(c) does not by its terms affirmatively require the filing of a motion to recall the mandate as the means of presenting a *Lucey*-type challenge of ineffectiveness on a direct appeal. However, no more suitable method of raising such a claim is available procedurally.

To be sure, there are procedures which are not available. In *Streater v. United States, supra*, 429 A.2d at 174, we stated that D.C.Code § 23–110, a popular means of collaterally attacking a conviction, "provides no basis upon which the trial court may review appellate proceedings." This construction is supported by decisions on the analogous federal statute, 28 U.S.C. § 2255 (1982) (cited in *Streater, supra*, 429 A.2d at 174), as well as by reason: the Superior Court should not have authority to rule on the constitutionality of an appellate proceeding.[13] *Streater* is particularly instructive in this case because of the identity of issues—ineffectiveness of appellate counsel.

For much the same reason, D.C.Code § 16–1901, which provides for habeas corpus relief, does not vest in Superior Court the power to entertain complaints about the adequacy of appellate counsel. Upon application, the court may grant a habeas corpus writ "if the facts set forth in the petition make a prima facie case" that a person is being unlawfully confined. *Id.* § 16–1901(a). In the context of this case, where a denial of due process would form the basis of a petition, such a determination would necessarily require the lower court to pass judgment on the efficacy of the appellate review. *See Streater v. Jackson*, 223 U.S.App.D.C. 393, 395, 691 F.2d 1026, 1028 (1982) (per curiam).[14]

■ A motion to recall the mandate, therefore, is the appropriate avenue to take in presenting a *Lucey* challenge. *See*

---

11. Remanding the case for resentencing would afford appellant the opportunity for another direct appeal. *See Hines v. United States*, 237 A.2d 827, 828–29 (D.C.1968).

12. We should note that prior to our promulgation of Rule 41(c) there was not rule of this court which addressed a motion to recall a mandate.

13. It is appropriate at this point to distinguish *Little v. United States*, 438 A.2d 1264 (D.C.1981), *Samuels v. United States*, 435 A.2d 392 (D.C. 1981), and *Hines v. United States, supra* note 11. In these cases the defendants, for one reason or another, had failed to timely file a notice of appeal from their convictions. In *Little* and *Samuels*, we remanded the case to the trial court for a hearing pursuant to § 23–110 on claims of ineffective assistance of counsel, *i.e.*, in bringing the direct appeal. In *Hines* we found ineffective assistance of counsel, and remanded for resentencing. Unlike the case now before us, there had been no appellate review on the merits in *Little, Samuels*, or *Hines*. These cases, therefore, while still viable, are inapposite here. *See Schwander v. Blackburn*, 750 F.2d 494, 501 (5th Cir.1985).

14. It does not appear that a defendant, in the first instance, could seek review of counsel's performance on appeal to this court by filing a writ of habeas corpus in the federal district court. *See Streater v. Jackson, supra*, and discussion in text *infra; cf. Swain v. Pressley*, 430 U.S. 372, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977) (construing § 23–110(g)).

*United States v. Winterhalder*, 724 F.2d 109, 111 (10th Cir.1983). This is not to say that this court will entertain on the merits a claim of ineffective appellate counsel by first recalling the mandate. This would be precipitous and run contrary to the accepted rule that mandates may be recalled only in the presence of exceptional circumstances. *See Greater Boston Television Corp. v. FCC*, 149 U.S.App.D.C. 322, 332, 463 F.2d 268 (1971) (rule is based on "the strong policy of repose, that there be an end to litigation"—citing *Hines v. Royal Indemnity Co.*, 253 F.2d 111, 114 (6th Cir. 1958)). Rather, this court will examine motions of this nature and, if they have on their face sufficient merit in accordance with this decision, will recall the mandate and reopen the direct appeal.[15] That way judgments will not be disturbed unless the movants carry their heavy initial burden. *See generally Streater v. United States*, 478 A.2d 1055, 1057 n. 3 (D.C.1984); *Dilley v. Alexander*, 200 U.S.App.D.C. 354, 357, 627 F.2d 407, 410 (1980). By this we mean the burden the movant must satisfy as delineated in this opinion to set forth in detail a persuasive case for recall of the mandate. To put it another way, conclusory assertions are not sufficient. The movant must give "chapter and verse." As a matter of degree, this court will be looking more for factual support than argument. The argument of "ineffectiveness" is likely to be quite familiar to the court.

Our decision in *Streater v. United States, supra,* suggests that this is an acceptable procedure. That case derived from our decision in the earlier *Streater v. United States, supra,* 429 A.2d at 174, in which we held that Streater's claim that he had been denied the effective assistance of appellate counsel was not cognizable in Superior Court under § 23–110.[16] Following this ruling, Streater petitioned for a writ of

habeas corpus in the federal district court for this jurisdiction. The federal district court dismissed the petition, however, on the ground that Streater could seek relief in Superior Court under § 16–1901 and therefore had not exhausted his local remedies. On appeal, the federal circuit court, in *Streater v. Jackson, supra,* vacated the judgment of the district court. It agreed with Streater's argument that our earlier decision foreclosed any remedy in Superior Court "on the ground that a trial court is not positioned to review proceedings in a court of appeals." 223 U.S.App.D.C. at 395, 691 F.2d at 1028.

Persuaded that this court would be best suited to resolve Streater's ineffective assistance of appellate counsel claim, the federal circuit court remanded the case to the district court with instructions that it hold Streater's habeas corpus petition in abeyance pending his application to this court to recall the mandate and reopen the direct appeal. *Id.* Accordingly, Streater then filed a motion in this court to "reopen his direct appeal," which we treated as a motion to recall the mandate. *Streater v. United States, supra,* 478 A.2d at 1057 n. 3. A motions panel granted the request, vacated our original judgment, and thereby revitalized Streater's direct appeal. *Id.* at 1057. Therefore, this court, as it did in *Streater,* will pursue a claim of ineffective assistance of appellate counsel *which initially has sufficient merit* by recalling the mandate and reopening the movant's direct appeal.

■ One final procedural matter must be addressed. It is conceivable that a *Lucey* claim will be premised on an argument which requires the resolution of some material factual issue. Suppose a defendant filed a motion to recall the mandate affirm-

---

**15.** This remedy is more expedient administratively than remanding the case to the trial court for resentencing, one approach suggested by appellant. *See* note 11, *supra.*

**16.** Streater claimed that his appellate counsel was ineffective because he filed a motion with

this court to withdraw from the appeal certifying that there were no nonfrivolous issues. *See Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). We had granted the motion and affirmed his convictions.

ing his conviction which challenged the adequacy of his appellate counsel on a newly discovered ground where a factual issue was crucial to the appellate issue. The government responds in opposition to the motion that no such occurrence took place, as a matter of fact. Plainly, before this court could rule on the motion to recall the mandate, and assuming the issue presented appears to be of sufficient gravity to warrant exploration, factual findings would be necessary on whether the circumstance actually existed and, if so, what exactly took place. Thus, in some cases, the record may be remanded to the trial court under appropriate instructions and time constraints for a hearing and factual findings, with this court retaining jurisdiction pending the trial court's findings and a return of the record.

## III

The question remains in this case whether there is merit to appellant's contention that he was denied his Fourteenth Amendment due process right to effective assistance of counsel on appeal. As the government suggests in its supplemental brief, in *Evitts v. Lucey, supra,* the Supreme Court left open "the content of appropriate standards for judging claims of ineffective assistance of appellate counsel." 105 S.Ct. at 833–34 (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). This was so because there had been no challenge to a lower court finding that Lucey received ineffective assistance on his first appeal. *Lucey, supra,* 105 S.Ct. at 833.[17] Consequently, we must proceed to fashion a standard and apply it to this case.

The government has framed the following suggested standard: in reviewing a claim of ineffective assistance of appellate counsel, this court must inquire (a) whether counsel's performance was grossly incompetent, (b) whether, as a result of such gross incompetence, the defendant was "deprived altogether of a meaningful appeal," and (c) whether the absence of a meaningful appeal resulted in such a "complete miscarriage of justice that it is more likely than not that an innocent man stands convicted." Given this standard, the government ultimately suggests that an appellant receives "effective assistance" if his counsel presents on appeal "one or more nonfrivolous issues to the best of his ability."

Appellant, on the other hand, argues that in formulating a standard, this court should be guided by the Supreme Court's decision in *Strickland v. Washington, supra.* In that case, the Court set forth a Sixth Amendment test for determining whether trial counsel was ineffective, saying:

The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.... First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 686–87, 104 S.Ct. at 2064. In expounding on the deficiency component of the test, the Court later concluded that "[t]he proper measure of attorney performance remains simply reasonableness under

17. Lucey was convicted by a Kentucky jury of trafficking in controlled substances. His notice of appeal to the Court of Appeals of Kentucky was timely filed by his retained counsel. However, counsel neglected to comply with an appellate rule which required appellants to file in the court the record on appeal and a "Statement of Appeal." Consequently, upon motion of the Commonwealth, Lucey's appeal was dismissed on that ground.

prevailing professional norms." *Id.* at 688, 104 S.Ct. at 2065. *See Hill v. United States,* 489 A.2d 1078, 1080–81 (D.C.1985). However, at no place in the *Strickland* opinion does the court intimate that these particular standards should govern in assessing the performance of appellate counsel.

Although the Court in *Lucey* declined to formulate a due process standard in relation to ineffectiveness of counsel on appeal, it did relate its holdings in several equal protection clause cases:

> Just as a transcript may by rule or custom be a prerequisite to appellate review, the services of a lawyer will for virtually every layman be necessary to present an appeal in a form suitable for appellate consideration on the merits. *See Griffin v. Illinois,* 351 U.S. 12, 20 [76 S.Ct. 585, 591, 100 L.Ed. 891] (1956). Therefore, *Douglas v. California,* 372 U.S. 353 [83 S.Ct. 814, 9 L.Ed.2d 811] (1963), recognized that the principles of *Griffin* required a State that afforded a right of appeal to make that appeal more than a "meaningless ritual" by supplying an indigent appellant in a criminal case with an attorney. *Id.* at 358 [83 S.Ct. at 817].... [T]he attorney need not advance *every* argument, regardless of merit, urged by the appellant, *see Jones v. Barnes,* 463 U.S. 745 [103 S.Ct. 3308, 77 L.Ed.2d 987] (1983). But the attorney must be available to assist in preparing and submitting a brief to the appellate court, *Swenson v. Bosler,* 386 U.S. 258 [87 S.Ct. 996, 18 L.Ed.2d 33] (1967) (per curiam) and must play the role of an active advocate rather than a mere friend of the court assisting in a detached evaluation of appellant's claim. *See Anders v. California,* 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493] (1967); *see also Entsminger v. Iowa,* 386 U.S. 748 [87 S.Ct. 1402, 18 L.Ed.2d 501] (1967).

*Lucey, supra,* 105 S.Ct. at 834–35 (emphasis in original; citations given in full). Recognizing that in the case before it counsel had effectively deprived Lucey of his first appeal, the court went on to say:

> To be sure ... [Lucey] did have nominal representation when he brought this appeal. But nominal representation on an appeal as of right—like nominal representation at trial—does not suffice to render the proceedings constitutionally adequate; a party whose counsel is unable to provide *effective representation* is in no better position than one who has no counsel at all.

*Id.* at 836 (emphasis added).

As *Lucey, supra,* makes clear, the Supreme Court has on occasion examined *on unequal treatment grounds* [18] the constitutional rights of criminal defendants in relation to appeals. In *Griffin v. Illinois, supra,* the Court held that an indigent defendant was denied equal protection (and due process of law) when the State refused to provide him a free transcript for an appeal. In so holding, the Court seemed primarily concerned that the State not deny *"adequate and effective appellate review* to indigent defendants." 351 U.S. at 20, 76 S.Ct. at 591 (emphasis added). And in *Douglas v. California, supra,* the Supreme Court found that indigent defendants had been denied equal protection of the law where the merits of the one appeal they had as of right from their convictions was decided without the benefit of counsel, after a determination by the State appellate court that appointed counsel would be of no value to the defendants or the court. 372 U.S. at 356–57, 83 S.Ct. at 816. The Court then offered the following rationale:

> There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf,

---

18. We do not have the unequal treatment issue here. Counsel under attack in this case had been retained by appellant.

while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself. The indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal.

*Id.* at 357–58, 83 S.Ct. at 816–17.

Later cases from the Court have expounded these general concepts. In *Swenson v. Bosler, supra,* the Court applied *Douglas* to a similar set of facts and concluded that

the assistance of appellate counsel in preparing and submitting a brief to the appellate court which defines the legal principles upon which the claims of error are based and which designates and interprets the relevant portions of the trial transcript may well be of substantial benefit to the defendant. This advantage may not be denied to a criminal defendant, solely because of his indigency, on the only appeal which the State affords him as a matter of right.

386 U.S. at 259, 87 S.Ct. at 997.

In the same year (1967), the Court decided *Entsminger v. Iowa* and *Anders v. California, supra.* Entsminger challenged an Iowa appellate criminal procedure concerning the provision of transcripts. The Court held that the particular procedure "precluded [Entsminger] from obtaining a *complete and effective* appellate review of his conviction...." 386 U.S. at 752, 87 S.Ct. at 1404 (emphasis added). In summarizing its decisions in this area, the Court reiterated the precept that "appointed [appellate] counsel must function in the active role of an advocate, as opposed to that of *amicus curiae* ...." *Id.* at 751, 87 S.Ct. at 1403 (citing *Ellis v. United States,* 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958)). *Anders v. California, supra,* addressed the duties of a court-appointed counsel on a first appeal of right when he has conscientiously determined that there is no merit to the indigent's appeal. In concluding that in such a case counsel is required to file what

has become known as an *Anders* brief, the Court stated:

The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate on behalf of his client, as opposed to that of *amicus curiae....* His role as advocate requires that he support his client's appeal to the best of his ability.

386 U.S. at 744, 87 S.Ct. at 1400.

Finally, in the recent opinion of *Jones v. Barnes, supra,* the Supreme Court confronted the question whether appellate counsel had a constitutional duty to raise every nonfrivolous issue requested by the defendant. Construing *Anders,* the Court held that counsel was under no such obligation if, "as a matter of professional judgment, [he] decides not to present those points." 103 S.Ct. at 3312. The Court reasoned that

*Anders* recognized that the role of the [appellate] advocate "requires that he support his client's appeal to the best of his ability." 386 U.S. at 744 [87 S.Ct. at 1400].... Here the appointed counsel did just that. For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of *vigorous and effective advocacy* that underlies *Anders.*

*Id.* at 3313–14 (emphasis added).

It is evident that the level of performance required of counsel on appeal will differ in some respects from that required of counsel at the trial level. The distinct nature of each proceeding mandates standards peculiar to each:

The purpose of the trial stage from the State's point of view is to convert a criminal defendant from a person presumed innocent to one found guilty beyond a reasonable doubt. To accomplish this purpose, the State employs a prosecuting attorney who presents evidence to the court, challenges any witnesses offered by the defendant, argues rulings of the

court, and makes direct arguments to the court and jury seeking to persuade them of the defendant's guilt.... By contrast, it is ordinarily the defendant, rather than the State, who initiates the appellate process, seeking not to fend off the efforts of the State's prosecutor but rather to overturn a finding of guilt made by a judge or jury below. The defendant needs an attorney on appeal not as a shield to protect him against being "haled into court" by the State and stripped of his presumption of innocence, but rather as a sword to upset the prior determination of guilt.

*Ross v. Moffitt*, 417 U.S. 600, 610–11, 94 S.Ct. 2437, 2443–44, 41 L.Ed.2d 341 (1974).[19] Moreover, while a defendant may be vindicated at either stage, quite often an appellate reversal acts only to breathe new life into his defense, whereas a favorable verdict at trial sets him free.

Parenthetically, it seems evident that, generally speaking, ineffective representation at the trial stage is apt to have a more telling effect on a defendant's case than poor representation on appeal. Trial counsel may forfeit a defense to any but the weakest prosecution if unprepared or otherwise inadequate. On the other hand, it is the unusual appeal whose outcome depends upon exceptional skill of counsel because even a poor appellate argument is met with incisive consideration by the appellate court, where deliberation and review are undertaken to the extent necessary for considered decision. To illustrate what we mean by this, where counsel in his brief, for example, summarily contends, with little explanation, that an arrest was not supported by probable cause, this court will scrutinize the pertinent portions of record and applicable law in order to reach its determination. No matter how poor the advocacy in support of the illegal arrest contention, the appellate court will determine whether it has merit provided the issue has been raised. But if, for example, counsel raised in the trial court the illegal arrest question to no avail but appellate counsel failed to even raise it on appeal, and the question not only had merit but would be determinative on the prosecution of the defendant, then in that event there may well be ineffective assistance of counsel.[20] In the first example, the unedifying assistance is compensated by the penetration of appellate review.[21] In the second instance, this compensation is unlikely to occur and the lack of effective advocacy may be fatal.

For these reasons, *Strickland* will not literally control in disposing of claims of ineffective assistance of counsel on appeal. But neither can we accept the suggestion by the government that counsel be deemed effective if he raises and argues to the best of his ability one or more nonfrivolous issues. Such a standard might permit nominal representation on appeal. For one thing, it excludes from consideration even a disastrous omission on counsel's part. Instead, we choose to borrow language from this court's plain error standard to serve as due process boundaries.[22] The perform-

19. Of course, *Moffitt* does not concern the effective assistance of counsel. Rather, in that case the Supreme Court addressed two questions: first, whether the Fourteenth Amendment due process or equal protection clause requires a state to provide free counsel to indigent defendants who seek discretionary appeals; and secondly, whether a state is required to provide counsel to indigent defendants petitioning the United States Supreme Court to grant certiorari. The Court held that in neither case is a state required to provide free counsel. 417 U.S. at 615–18, 94 S.Ct. at 2446–47.

20. In respect to suppression of evidence there is the factor that Super.Ct.Crim.R. 12(b)(3) requires that it be raised pretrial.

21. Of course, this is not to say the scope of this court's review is a substitute for determined advocacy. Where, for example, applicable law is unsettled, counsel's advocacy plays an especially important role in the appellate process.

22. The plain error standard, of course, is invoked to review errors not brought to the attention of the trial court. This limited application of the *rationale* of the plain error standard is a different matter than application of the actual

ance of appellate counsel will be deemed ineffective if it is "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of [the appellate process]." *Cf. Watts v. United States, supra,* 362 A.2d at 709 (citations omitted).[23] Or, to paraphrase *Strickland* for its proposition which has as much vitality on appeal as at trial, "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [appeal] cannot be relied on as having produced a just result." 466 U.S. at 686, 104 S.Ct. at 2064. After all, it can reasonably be said that *Griffin, Douglas, Anders, supra,* and their progeny were intended to promote fairness and integrity in the appellate process.

▆ To state the standard more exactly—in order to prevail on a motion to recall the mandate due to ineffective assistance of appellate counsel, the movant must show that counsel failed to raise an available issue on direct appeal which, if factu-

ally supported, would create the reasonable probability of reversal.[24] Mere general assertions are not enough. The movant must relate the facts of record (or otherwise) to support an assertion. This should be clearly understood. Where a sufficient showing is made, the mandate will be recalled and a division of this court will review for substance the asserted error. However, that counsel unsatisfactorily argued an assigned error on direct appeal will not alone support a claim of ineffective assistance of appellate counsel. We say this because on the original appeal once this court is directed toward asserted error, it examines the merits of the issue, and the court recognizes prejudicial error when a contention of this gravity is brought to the court's attention.[25]

## IV

▆ Turning to the claims in this case, appellant's principal contention in his motion to recall the mandate is that his appel-

plain error standard in a collateral attack on a conviction, which was inveighed against by the Supreme Court in *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

**23.** *Compare United States v. Atkinson,* 297 U.S. 157, 159, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936) (citations omitted) (appeals court may notice errors which "seriously affect the fairness, integrity, or public reputation of the judicial proceedings"); *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985) (plain error "undermine[s] the fundamental fairness of the trial and contribute[s] to a miscarriage of justice").

**24.** We note that in this respect *Strickland* is analogous for a defendant cannot prevail on a claim of inadequate trial counsel absent a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. at 2068; *accord Hill v. Lockhart,* —— U.S. ——, ——, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985).

**25.** The standard we have enunciated in this opinion is consistent with approaches taken by federal circuit courts which have addressed this issue (in pre-*Lucey* cases). *See, e.g., Parton v. Wyrick,* 704 F.2d 415, 416–17 (8th Cir.1983) (whether appellate counsel "failed to exercise

the customary skills and diligence of a reasonable, competent attorney in failing to raise [an] issue on appeal ... [and appellant] was materially prejudiced thereby"; appellant was not prejudiced by omission since issue did not have "arguable merit"); *Passmore v. Estelle,* 607 F.2d 662, 663–64 (5th Cir.1979) (retained appellate counsel's filing of one sentence brief rendered appellate proceeding "fundamentally unfair") (modifying earlier opinion at 594 F.2d 115 (5th Cir.1979)), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980); *Gillihan v. Rodriguez,* 551 F.2d 1182, 1189 (10th Cir.), *cert. denied,* 434 U.S. 845, 98 S.Ct. 148, 54 L.Ed.2d 111 (1977) (appellate counsel's failure to raise issue on appeal did not constitute a " 'failure to observe that fundamental fairness essential to the very concept of justice' "—quoting *United States v. Guerrero,* 517 F.2d 528, 531 (10th Cir.1975)).

We should note, however, that some federal courts, in post-*Lucey* cases, have looked solely to the *Strickland* test in assessing claims of ineffective assistance of appellate counsel. *See, e.g., Beavers v. Lockhart,* 755 F.2d 657, 661 (8th Cir. 1985); *Bowen v. Foltz,* 763 F.2d 191, 195 (6th Cir.1985) (Contie, J., dissenting). In light of the distinct nature of the appellate process, as well as the scope of appellate review, it is our view that the *Strickland* standard cannot be so mechanically transformed, for the reasons we have delineated earlier.

late counsel failed to demonstrate on direct appeal that it was plain error for the trial court to consolidate for trial the murder charge with the two assault charges. Appellant argues that "[i]f this court had been informed of the manner in which the government had used the evidence of the assaults at ... trial, it could not have found that the evidence of the assaults and murder was 'simple and distinct' or that ... [he] was not prejudiced by their joinder." However, under the standard we have enunciated, appellant's argument must be rejected.

On direct appeal, appellant's counsel raised the contention that the trial court erred in granting the government's motion to consolidate the separate indictments. In his analysis, counsel specifically maintained that the government had used the evidence of the 1976 assaults "to show the defendant's general bad character and tendency to commit the particular offense charged [the 1977 murder of Timothy Reeves]." Therefore, in essence, appellant would have us recall the mandate and reopen his appeal on this issue because counsel unsatisfactorily represented his position. This we will not do. Improper consolidation of the indictments was assigned as error on direct appeal, and was considered by this court. Our conclusion that "the argument [was] sufficiently strong for consolidation ... that the trial court did not commit plain error in failing, absent objection, to sever the murder and assault charges" was based not only on the submissions of counsel, but on a review of the pertinent portions of record and governing law. To be sure, had there been plain error on this point this court would have recognized it. *See generally Allen v. United States,* 495 A.2d 1145 (D.C.1985). We will not afford a second review on this issue.

Appellant also submits that appellate counsel was ineffective in that he challenged the sufficiency of evidence of first-degree murder based on the premeditation element, rather than on identity which, he submits, presented a stronger case for re-

versal. This is a more pointed way of phrasing a claim of insufficiency of the evidence to support a conviction. On direct appeal, counsel argued that "the trial court erred in failing to grant appellant's motion for judgment of acquittal as to the charge of first-degree murder." This argument was developed by counsel, however, primarily from the standpoint of insufficient evidence of premeditation. In this regard, counsel maintained that "there is no evidence whatsoever from which the jury could have found that appellant planned to kill Timothy Reeves in advance." The court stated the issue correctly: "[a]ppellant argues ... that the government's evidence was not sufficient to support his conviction...." *Watson, supra,* Memorandum Opinion and Judgment at 7. This court rejected this claim, finding "facts ample to permit a reasonable jury to find guilt beyond a reasonable doubt." *Id.* (citing *Jackson v. United States,* 395 A.2d 99, 102 (1978)). And, on the specific question of premeditation, we concluded that "[a]lthough the evidence supporting premeditation is circumstantial, the jury may infer premeditation from the surrounding facts and circumstances. The facts established here provide adequate support for the jury's conclusion." *Id.* at 8 (citations omitted).

■ Although appellant's claim now that counsel should have attacked his conviction on appeal on the ground that there was insufficient evidence *that he committed the murder* arguably draws into question counsel's failure to assign a more particular error, we cannot say that had the issue been specifically raised in that fashion there would have been a reasonable probability of reversal. This is so because counsel did raise a claim of insufficiency of the evidence on the first-degree murder conviction. And in our earlier opinion, this court noted this insufficiency of the evidence contention before stating appellant's more specific contention that evidence of *premeditation* was insufficient. *Watson, supra,* Memorandum Opinion and Judgment at 7.

Moreover, although this court was not then specifically directed to an identity issue, in reviewing the record the court did recount facts of record on the identity issue which implicated appellant as the murderer and which were sufficient to support the jury's finding of guilt beyond a reasonable doubt.[26] On this review it must be assumed that on the first appeal the court would have recognized insufficiency of the evidence to convict appellant of the murder charge if this was the evidentiary state of the record it was reviewing. We will not afford still a second review on the sufficiency of the evidence in this appeal.

We conclude that appellant's due process challenge to the effectiveness of his counsel on appeal must fail. Appellant has not shown initially that counsel failed to present an available issue on direct appeal which, if supported by the record on appeal, would create a reasonable probability of reversal. We therefore deny appellant's motion to recall the mandate.

### V

Appellant's § 23–110 motions and habeas corpus petition focused on the adequacy of trial counsel. Appellant now challenges the trial court's disposition of each, claiming that he was prejudiced by instances of actual ineffectiveness, to wit: (1) counsel's failure to oppose consolidation of the indictments or move for a severance or mistrial when the prejudice of joinder became evi-

dent; and (2) counsel's failure to object to the admission of "other crimes" evidence. Appellant also contends that counsel's general lack of preparation, taken together with various errors committed at trial, constituted ineffective assistance. He thus urges this court to grant him new trials on the separate indictments.[27]

At the outset, we should reiterate the constitutional standard on effective assistance of trial counsel as promulgated by the Supreme Court in *Strickland v. Washington, supra.* In *Hill v. United States, supra,* 489 A.2d at 1080–81, we recently related the *Strickland* standard as follows:

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland, supra,* 466 U.S. at 686 [104 S.Ct. at 2064] (quoted in *White v. United States,* 484 A.2d 553, 558 (D.C.1984)). In more concrete terms, this requires a showing that counsel's performance was deficient, *i.e.,* unreasonable under the prevailing norms, and that such deficiency prejudiced the defense. *White, supra,* 484 A.2d at 558 (citing *Strickland, supra,* 466 U.S. at 687 [104 S.Ct. at 2064]). "Prejudice" in this context connotes error "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* (quoting *Strickland, supra,* 466 U.S. at 687 [104 S.Ct. at 2064]).

**26.** For instance, we noted in our opinion that *appellant* had complained about Timothy Reeves' presence in the Quincy Street house. Prior to the killing, *appellant* told his co-worker, Robert Mitchell, that he "would kick the son's ass" if he did not leave the house. Alvin Watson, appellant's brother, heard *him* tell Joan Swearinger that "we're going to get him out of that house...."

Robert Mitchell also testified that *appellant* left the family store on the night of June 28 carrying the pouch for his .357 magnum. As he left, *appellant* stated that he intended "to go over to the house and take care of some business."
*Watson, supra,* Memorandum Opinion and Judgment at 7–8 (emphasis added and record references omitted).

**27.** Appellant's *pro se* habeas corpus petition was denied by the trial court on the ground that the matters raised were "the subject of review by the District of Columbia Court of Appeals." Appellant had argued in the petition that trial counsel was ineffective because he was not present at the pretrial hearing at which the court consolidated for trial the separate indictments. Although appellant's convictions were reviewed by this court, the issue addressed in his petition, *viz.,* the absence of counsel at a critical stage of the proceedings, was not considered on appellant's direct appeal. We nevertheless reject his contention for the reasons set forth in note 30, *infra,* and accompanying text.

*Strickland* instructs us to be "highly deferential" in our scrutiny of counsel's performance. Consequently, a defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland, supra,* 466 U.S. at 689 [104 S.Ct. at 2065–66].

With this in mind, we examine appellant's claims.

■ Appellant's principal contention is that "trial counsel's failure to oppose consolidation of offenses or to move for a severance when the evidence was misused, standing alone, was an error 'so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.' "[28] (Quoting *Strickland, supra,* 466 U.S. at 687, 104 S.Ct. at 2064.) We do not agree. As *Strickland* makes clear, in order for appellant to succeed on an ineffective assistance of trial counsel claim, he must first prove that counsel's performance was deficient. He must then demonstrate that but for counsel's unprofessional performance, there is a reasonable probability that the result of the proceeding would have been different. *See Hill v. Lockhart, supra,* —— U.S. at ——, 106 S.Ct. at 369. And this will only be accomplished by a factual recitation of exactly what transpired below. We need not explore whether trial counsel's performance was deficient in that he did not oppose consolidation of the separate indictments or later move for a severance, for appellant has failed to meet his burden of showing that had counsel done so, there is

a reasonable probability that the result of the proceeding would have been different.

We concluded on the previous appeal that the trial court did not commit plain error in ordering consolidation of the indictments, or in failing to later grant a severance, because the argument was "sufficiently strong" for consolidation on the basis that the evidence of each crime was "simple and distinct." *Watson, supra,* Memorandum Opinion and Judgment at 7 (citing *Drew, supra,* 118 U.S.App.D.C. at 17, 331 F.2d at 91).[29] This holding necessarily disposes of appellant's *Strickland* contention. "Plain error" encompasses only such error, unnoticed at trial, which so affects substantial rights of the parties as to jeopardize the very fairness and integrity of the trial. *See* D.C. Code § 11–721(e) (1981); *Watts v. United States, supra,* 362 A.2d at 709 (citations omitted). By concluding on appellant's direct appeal that there was no plain error, *i.e.,* no error affecting substantial rights, we were saying in effect that in all probability the purported error would not have affected the outcome of his trial. This being so, counsel's failure to notice such error at trial cannot be deemed "ineffectiveness" within the context of *Strickland,* since perforce there is no reasonable probability that absent counsel's (assumed) failure the result of the proceeding would have been different. *See Chavarria v. United States,* 505 A.2d 59, 65–66 (D.C.1986); *see also Hill v. United States, supra,* 489 A.2d at 1080 (counsel's failure to move to suppress incriminating post-arrest statements was not ineffective assistance "in light of

---

**28.** As we noted earlier, counsel did oppose before trial the joint trial of appellant and Joan Swearinger.

**29.** Elsewhere in *Drew* it was stated:
[E]ven where the evidence of [other crimes] would not have been admissible in separate trials, if, from the nature of the crimes charged, it appears that the prosecutor might be able to present the evidence in such a manner that the accused is not confounded in his defense and the jury will be able to treat the evidence relevant to each charge separately and distinctly, the trial judge need not

order severance or election at the commencement of the trial. If, however, it appears at any stage in the trial that the defendant will be embarrassed in making his defense or that there is a possibility that the jury will become or has become confused, upon proper motion, the trial judge shall order severance.
*Drew, supra,* 118 U.S.App.D.C. at 17–18, 331 F.2d at 91–92. Decisions of this court have followed this reasoning. *See, e.g., Fields v. United States,* 484 A.2d 570, 574 (D.C.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2144, 85 L.Ed.2d 501 (1985).

our conclusion [on appeal] that appellant freely offered his post-arrest statements").

Our holding on this issue is supported by another consideration. At the hearing at which the court ruled that the indictments would be consolidated, the court related that it fully considered the matter, saying:

> [A]fter reading everything and listening to argument ... [at the last hearing], [there is] no question in my mind that the cases should be severed. It can be severed in one of two ways. Let Mr. Watson be tried for both offenses individually, and Ms. Swearinger separately, or try Ms. Swearinger and Mr. Watson on the ... shooting[s]. And then try Mr. Watson for the other matter individually.

The court thereupon ruled that it would consolidate all the charges against appellant and sever the charges against Joan Swearinger. Thus, it is not as though trial counsel's failure to raise the issue before trial precluded the court from considering consolidation. In short, we do not conclude that appellant was sufficiently prejudiced in view of the trial court's consideration.[30]

■ Appellant's other allegations of actual ineffectiveness may be addressed without much elaboration. Appellant argues that trial counsel failed to try to exclude "other crimes" evidence that two weeks before the murder of Timothy Reeves he had fired two or three shots in anger at a neighbor's apartment with a .25 caliber gun that he routinely carried, and that he owned and regularly carried various guns. We note, however, that counsel did object to evidence of the earlier gun firings on relevance grounds, although he did not specifically argue the "bad acts" aspect of the relevancy objection, which is a form of relevance. *See* FED.R.EVID. 401–12. Moreover, appellant's ownership of various guns, coupled with the fact that he routinely carried one, would appear to be probative on the issue of the identity of the Reeves' murderer, particularly since he often carried a gun of the same caliber used against Reeves. *See Morton v. United States,* 87 U.S.App.D.C. 135, 183 F.2d 844 (1950); *see generally Jones v. United States,* 477 A.2d 231, 237–41 (D.C.1984). In any event, counsel's failure to more pointedly attempt to exclude such evidence does not rise to the level of ineffective assistance.

■ Appellant's final contention is that "trial counsel's general lack of preparation and other errors at trial, when considered together, also constituted ineffective assistance of counsel and require reversal." In this respect, appellant points principally to: (1) counsel's failure to obtain the medical records of Robert Swearinger, a key government witness, which reveal that Swearinger may have been intoxicated on the night of the 1976 shootings; and (2) counsel's failure to adequately cross-examine Richard Knight, the sole witness to the May 30, 1976 assault. While we agree that trial counsel may well have committed some "errors" in defending appellant,[31] we cannot say that these particular errors, even when taken together, were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

---

30. The allegation that trial counsel was ineffective because he was not present at the pretrial hearing at which the court ruled that it would consolidate the indictments against appellant is without merit. As the government points out in its post-argument memorandum to this court, appellant complains that his attorney was not present at a hearing conducted on March 8, 1978, at which the court essentially just announced its decision on the government's motion to consolidate. Argument on the consolidation motion actually took place at a hearing conducted on January 15, 1978, which was attended by appellant's trial counsel.

31. Counsel's "error" in this connection was his failure to obtain the medical records of Robert Swearinger. At appellant's post-trial § 23–110 hearing, trial counsel testified that he had no knowledge that Swearinger may have been intoxicated the night of the 1976 shootings. Yet, he also testified that he knew Swearinger had been drinking that night and that he considered him to be an "excessive drinker." Under the circumstances, counsel should have examined Swearinger's medical records to see if they shed light on his condition.

*Strickland, supra,* 466 U.S. at 687, 104 S.Ct. at 2064.

We are not persuaded that the trial court incorrectly determined there had been effective assistance of counsel since it cannot be said that but for counsel's shortcomings, there is a reasonable probability that the result of appellant's trial would have been different. *Id.* at 694, 104 S.Ct. at 2068. We hold therefore that the trial court properly denied appellant relief from his convictions.

## CONCLUSION

We conclude that appellant is not entitled to a recall of the mandate and his motion for recall is denied. We see *no grounds for a reversal of the trial court in the § 23–110 and habeas corpus proceedings. These judgments are affirmed.

*So ordered.*

NEBEKER, Associate Judge, concurring:

I concur in Judge Gallagher's opinion for the court. Surely, if appellate courts must entertain challenges to the performance of appellate counsel, they should do so under the highest threshold and consistent with "the strong policy of repose, that there be an end to litigation...." *Ante* at 80–81. With the decision in *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), that policy of repose has been shaken. For example, in *High v. United States,* No. 79–776, petitioner filed a Petition for Rehearing or Rehearing En Banc to review the denial of a motion to recall and reissue the mandate to start the time in which to move for reduction of sentence. In *High, supra,* petitioner challenges appellate counsel's performance four and one-half years after our mandate affirming convictions for second-degree murder and attempted robbery.

The decision in *Evitts v. Lucey* did not articulate a standard by which appellate counsel's performance is to be judged. This is understandable for two reasons: first, because a Statement of Appeal had

not been filed, the state appeal was not decided on the merits; second, the inadequacy of counsel for failure to file the statement was conceded. 105 S.Ct. at 833. It is quite another matter to be pressed to divine a standard of competence in cases that have been briefed and decided. This case is a good example of the contention that counsel did not put the right gloss on the arguments he advanced. *High v. United States, supra,* presents another example: inadequacy is asserted based on counsel's failure to advise the convicted appellant that he had 120 days after our mandate to request sentence reduction. Presumably, the most frequent claim will be that counsel failed to raise a particular issue. It is certain that whatever the issue, it will be born of hindsight.

Judge Gallagher's opinion most ably fashions our standard for deciding when our earlier judgment is vulnerable to attack for perceived failures of counsel. An appeal should not be reopened except upon the clearest showing that the result of the appeal would have been other than an affirmance if handled differently. But the fact remains the decision not to recall the mandate necessitates a later revisit of the record on appeal. In such instances, the facts and issues have been long forgotten. Indeed, the original division or court may not be available and new judges will have to be assigned to the case.

All this suggests strongly that the *Evitts v. Lucey* holding be limited to cases in which the appeal has not been decided on the merits. Indeed, the majority in *Lucey* has left this avenue open. It cited approvingly to the *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), holding that counsel need not raise every issue regardless of merit. 105 S.Ct. at 835, 836–37 n. 8. The majority also did not hesitate to leave the so-called "Anders Procedure," *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as a valid method of deciding appeals on the merits when counsel can find no issue profession-

ally worthy to be raised. *Id.* at 835, 836, 840.

Accordingly, in the absence of a clear holding to the contrary, it seems to me that the process due on appeal of right has been supplied when the case has been reviewed on the merits and the decision becomes final with our mandate. I would not leave issue identification and the briefing process open after the appeal has been decided on the merits. The burden on the appellate process is too great if months or years later we must reexamine the record to decide if the result could have been different.